[Civ. No. 24434. Fourth Dist., Div. One. July 17, 1981.]

In re RUBEN A., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
RUBEN A., Defendant and Appellant.

**COUNSEL**

Frank C. Scanlon, Acting Public Defender, and David W. Duncan, Deputy Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen and Keith I. Motley, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**THE COURT.\***—Ruben A., a minor, appeals orders made by the juvenile court after a series of petitions and hearings which are summarized: On August 22, 1979, Ruben was charged by petition with receiving stolen property (Pen. Code, § 496). A true finding was made and Ruben was placed on probation, although the record does not state what the conditions of probation were.

On October 3, 1980, a supplemental petition was filed under Welfare and Institutions Code section 777[1] alleging Ruben violated the terms of his probation by failing to report to his probation officer. At a hearing conducted on the supplemental petition, Ruben admitted the allegation and the court made a true finding as to it. The court, however, failed to find Ruben's probation up to that point had not been effective in his rehabilitation or protection. The court again granted Ruben probation, subject to a number of conditions, among them, requiring Ruben to report to his probation officer, to obey the rules imposed by his probation officer, and to attend school regularly. The court also committed Ruben to the Youth Guidance Center for a term of 90 days, but stayed the commitment until January 14, 1981, where a "Progress Review" hearing was scheduled to take place. The court warned Ruben if he violated any of the conditions of his probation, "I'm going to pick you up and put you over in [the Youth Guidance Center] for 90 days...."

---

\*Before Brown (Gerald), P. J., Staniforth, J., and Work, J.

[1]The petition itself makes no reference to section 777, however, it uses the language of that section in alleging Ruben's previous probation "has not been effective in [his] rehabilitation or protection." Unfortunately, the district attorney neglected to state in the petition whether he would be seeking a more restrictive level of custody for Ruben. His failure to do so apparently led to a great deal of confusion for the court which eventually committed Ruben to a stay at juvenile hall and with the Youth Guidance Center on the basis "there is no change of circumstances."

Where an interested party seeks modification of a previous order but does not seek a more restrictive level of custody for the minor, he proceeds under Welfare and Institutions Code section 778. In that case, his petition is grounded in a change of circumstances or new evidence (Welf. & Inst. Code, § 778; Cal. Rules of Court, rule 1391(c)). The petition here, however, did not allege such change of circumstances or new evidence, but, rather was drafted in the exact language of Welfare and Institutions Code section 777 which authorizes the People to seek a more restrictive level of custody. The fact the section 777 petition itself did not request Ruben's custody be taken from his parents and he be committed to juvenile hall and the guidance center, as is required before section 777 comes into effect, is insignificant in light of Ruben's eventual commitment to both institutions.

At the January 14, 1981, "Progress Review" hearing, the People handed the court a "Progress Report" dated that same day, which alleged Ruben had been habitually truant from school, had shown up at a meeting with his probation officer drunk, had failed to obey his probation officer and had violated his curfew. The report recommended the stayed commitment to the Youth Guidance Center be imposed and Ruben be held in custody at juvenile hall until the center was ready to admit him. There is nothing in the record to indicate Ruben had any advance notice of the contents of this report nor of the effort to have him detained in juvenile hall. While he may have *assumed* the People would seek to have his commitment to the Youth Guidance Center imposed, he had no formal notice of this before the hearing.

At the hearing, the People explained it was common practice in Orange County to have minors on probation committed to a county facility (such as the Youth Guidance Center), then have their commitments stayed for a period of time during which their progress on probation would be monitored, a "Progress Review" hearing scheduled, and a report given to the court the day of the hearing, indicating the minor's success or failure and listing recommendations for further disposition. While Ruben stipulated this was common practice in Orange County, he objected to it, contending it did not comply with the requirements of section 777. The court rejected the argument, stating its belief it had discretion, unfettered by section 777, to decide whether to terminate the stay on the guidance center commitment. Ruben was committed to the center and was ordered detained in juvenile hall until the center could take him. The court made no findings Ruben had violated any of the terms of his probation as alleged in the "Progress Report."

■ Whenever a section 777 supplemental petition is brought, at the later hearing, "the court *must* make an express finding the previous order in fact has been rehabilitatively ineffective." (*In re Michael B.* (1980) 28 Cal.3d 548, 552-553 [169 Cal.Rptr. 723, 620 P.2d 173], italics added.) Failure to do so warrants reversal. The court here failed to make such a finding either at the hearing on the section 777 petition or at the "Progress Review" hearing.[2] The dispositional orders must therefore be reversed.

---

[2]The failure of defense counsel to assert this error is understandable. The district attorney's failure to spell out what disposition he was seeking at the time of the section 777 petition (see fn. 1) and his use of the "Progress Review" hearing device created a procedural mish-mash sure to confuse anyone.

The "Progress Review" procedure deserves some comment. This case is a prime example how such a procedure can create a nightmarish situation, all in an effort to sidestep the requirements of section 777. Use of this procedure resulted in Ruben being taken from the custody of his parents and committed to a more restrictive level of custody on the basis of charges (truancy, intoxication, failure to obey probation officer and curfew violations) for which he received no notice and upon which no factual findings were made by the court. In addition, Ruben had no notice the district attorney intended to seek more restrictive custody. These results, in addition to the court's failure to find Ruben's previous probation was ineffective, are in derogation of the law (see *In re Arthur N.* (1976) 16 Cal.3d 226, 240 [127 Cal.Rptr. 641, 545 P.2d 1345]; *In re Phillip A.* (1980) 109 Cal.App.3d 1004, 1007 [169 Cal.Rptr. 88]; *In re Mark M.* (1980) 109 Cal.App.3d 873, 876-877 [167 Cal.Rptr. 461]; *In re Gerald B.* (1980) 105 Cal.App.3d 119, 126 [164 Cal.Rptr. 193]; *In re Jose P.* (1980) 101 Cal.App.3d 52, 60 [161 Cal.Rptr. 400], mod. 102 Cal.App.3d 163a; *In re Glenn K.* (1977) 74 Cal.App.3d 342, 346 [141 Cal.Rptr. 486]), and any procedural device which allows them to occur should not be used.

Orders reversed.