[No. F004024. Fifth Dist. Apr. 4, 1985.]

In re GERONIMO M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
GERONIMO M., Defendant and Appellant.

574

**COUNSEL**

Kent A. Barkhurst, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, W. Scott Thorpe and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

VANDER WALL, J.*—

### STATEMENT OF THE CASE

On January 3, 1984, a supplemental petition for modification of a previous disposition was filed in accordance with Welfare and Institutions Code section 777 in the matter of Geronimo M., appellant.[1] Appellant had previously been found to be a minor who came within the provisions of section 602.[2] On September 8, 1983, he was adjudged a ward of the court, placed on probation and committed to C. K. Wakefield School for 18 months. The supplemental petition alleged that this previous order had become ineffective in rehabilitating the minor in that he had accumulated 47 negative behavior writeups at C. K. Wakefield in a little over 1 month's time.

An adjudicatory hearing on the supplemental petition was held on January 25, 1984, at which time appellant was advised of his rights, and thereafter admitted the allegations contained in the petition. A dispositional hearing was held February 8, 1984. The court continued the hearing for thirty days, released appellant to the custody of his uncle, and ordered him to attend Project Fresno Pride School for one year. The dispositional hearing was again continued on March 8, 1984. On April 10, 1984, a final dispositional hearing was held, and appellant was committed to the California Youth Authority (hereinafter CYA).

A timely notice of appeal was filed on April 20, 1984.

### DISCUSSION

*I. The court's order removing appellant from the custody of his uncle and committing him to CYA was in violation of section 777, in that he was not given notice or a hearing regarding his behavior since his release from C. K. Wakefield School*

After being declared a ward of the court pursuant to section 602, appellant was ordered committed to attend C. K. Wakefield School for 18

---

*Assigned by the Chairperson of the Judicial Council.

[1]All statutory references will be to the Welfare and Institutions Code unless otherwise noted.

[2]This finding was based upon a violation of Penal Code section 220 and Penal Code section 240.

months.[3] While at C. K. Wakefield School he received 47 negative behavior writeups and a supplemental petition was filed pursuant to section 777.[4] At the adjudicatory hearing appellant was advised of his rights and admitted the allegations of the petition. The petition was found to be true, and it was found beyond a reasonable doubt that the previous commitment had been ineffective. (Appellant is not contesting anything that occurred at this hearing.)

The dispositional hearing was held on February 8, 1984. After reading the reports and hearing arguments, the following occurred:

"[THE COURT:] I have a funny feeling but, Jerry, I have a funny feeling that you can make it, and I'm going to give you a chance, but I'm going to do it in a very strange way that I've never done as a Judge and I'm going

---

[3]Section 602 provides: "Any person who is under the age of 18 years when he violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

[4]Section 777 provides: "An order changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative or friend and directing placement in a foster home, or commitment to a private institution or commitment to a county institution, or an order changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after noticed hearing upon a supplemental petition.

"(a) The supplemental petition shall be filed by the probation officer, where a minor has been declared a ward of the court or a probationer under Section 601, and by the prosecuting attorney at the request of the probation officer where a minor has been declared a ward or probationer under Section 602, in the original matter and shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor.

"(b) Notwithstanding the provisions of subdivision (a), if the petition alleges a violation of a condition of probation and is for the commitment of a minor to a county juvenile institution for a period of 15 days or less, it is not necessary to allege and prove that the previous disposition has not been effective in the rehabilitation or protection of the minor. In order to make such a commitment the court must, however, find that the commitment is in the best interest of the minor. The provisions of this subdivision may not be utilized more than twice during the time the minor is a ward of the court.

"(c) Upon the filing of a supplemental petition, the clerk of the juvenile court shall immediately set the same for hearing within 30 days, and the probation officer shall cause notice of it to be served upon the persons and in the manner prescribed by Sections 658 and 660.

"(d) An order for the detention of the minor pending adjudication of the petition may be made only after a hearing is conducted pursuant to Article 15 (commencing with Section 625) of this chapter.

"(e) The filing of a supplemental petition and the hearing thereon shall not be required for the commitment of a minor to a county institution for a period of 30 days or less pursuant to an original or a previous order imposing a specified time in custody and staying the enforcement of the order subject to subsequent violation of a condition or conditions of probation, provided that in order to make the commitment, the court finds at a hearing that the minor has violated a condition of probation."

to need your consent to do it this way because I don't have the authority even as a Judge to do it this way, but only with your consent.

"What I'm going to do is this; I'm going to continue this disposition. I'm going to make no ruling today, and I'm going to release you today to your uncle.

"THE MINOR: All right.

"THE COURT: I'm not going to make a ruling, but what will happen, Jerry, is all of my orders that I made before on September 8th of '83 will remain in full force and effect. You're commit[t]ed to Wakefield, the terms, conditions of probation, the whole bit so you're under the full impact of those orders except when I ordered you to Wakefield I ordered you into Wakefield for 18 months except for aftercare.

"What I'm going to do is get you out, put you with your uncle, and then I'm going to continue this disposition from month to month. Your [*sic*] going to come in here every month.

"THE MINOR: All right.

"THE COURT: Okay, that's the good news. Now for the bad news. If you so much as step out of line, you show me that you didn't mean what you said to me today in your letter that I've got here, you tell me that you're not good for your word and I promise you I will send you to CYA.

"THE MINOR: All right.

"THE COURT: And I'll send you to CYA for the full term. So, I'll give you a chance to prove yourself or if you prefer—and I'm dealing with you straight off the shoulder. Maybe you don't want something like that hanging over your head. Let's get it over with; just sent [*sic*] me to CYA, I'll do my time and get out and it's over with. I don't like that. You know what I mean?

"THE MINOR: Yeah.

"THE COURT: Just forget it and I'd rather do my time and at least when I get out I don't have to have that hanging over my head. Some people ask for that. I'm willing to do that because my inclination is to send you to CYA except for a funny little feeling I've got, but—and if you make up your mind you can do it, not me. Nothing I do makes any difference. Nothing hardly your Mom or Dad does, it's up to you.

"So, what would you prefer? I'll do what you want in that regard, either go to CYA now and get the time over and come back out or else live with your uncle and come back with me [*sic*] understanding that when you fall [*sic*] up it's going to be CYA.

"THE MINOR: Live with my uncle.

"THE COURT: Pardon?

"THE MINOR: Live with my uncle.

"THE COURT: You sure you think you can hang on to yourself?

"THE MINOR: Yeah.

"THE COURT: Because I know that if you start associating with the same crowd you're bound to get in trouble, isn't that right Mr. [M.]? It has so much to do with it. You can see your Mom and Dad, but I want you to live with him, okay?

"THE MINOR: (nodding).

"THE COURT: Okay, so the orders are going to be as follows: that this disposition is continued and I have your authority to do that, continue the disposition because the law requires I give it today unless it's completely okay with you.

". . . . . . . . . . . . . . . . . . . . . . .

"Okay, so a month from today is March 8th—I'm sorry, this is one I don't want a pro tem to handle. I'll be back in one second.

"All right, so what the Court is going to do now, Dale, I'm going to modify my orders of—I'm sure it's September 8th.

"Ms. DAVIS: Your Honor, may I suggest something before you finish?

"THE COURT: Yes.

"Ms. DAVIS: I did want to let you know of a new development; Lucianna Ventresca has been assigned to work at the Wakefield school and cover just the Project Pride cases, so she has a very small caseload of just the Project Pride, so I didn't know if you wanted to terminate the Wakefield commitment at this point.

"THE COURT: No, I'm not terminating, I'm releasing him. I intended to release him on aftercare to the custody of his uncle. Just modify those orders as follows: into Pride, you know about Pride School?

"THE MINOR: I'm going to Pride too?

"THE COURT: The Court is going to modify its orders of September 8th, 1983 as follows: number one, Jerry is to be released from aftercare forthwith—released to aftercare forthwith. Number, two,— . . .

" . . . . . . . . . . . . . . . . . . . . . . . . .

"Number two, released to the custody of his uncle . . .

" . . . . . . . . . . . . . . . . . . . . . . . .

" . . . Charles [M.]. Number three, he is commit[t]ed to Pride School for one year and a condition of probation is he obey all rules and conditions of Pride staff, counselors, and teachers. I think that's about all that we do, because all the other orders you're still on probation for further order of the Court, and all the conditions of probation, you understand that?

"THE MINOR: Yes.

"THE COURT: Orders remain in full force and effect.

"THE MINOR: Yeah.

"THE COURT: And then what I'm doing, I'm making orders for today with the stipulation of the minor and counsel, I am setting this disposition over to March 8th, I'm continuing this disposition until March the 8th and I'll do it again and we'll see how he's doing.

"Then I'll do that for a few months and if he's looking good and then after that maybe 2 months or 3 months, but you never get back there. He knows what's gonna happen. He's going to go to CYA so fast it will make his head spin. I'm going to leave it up to him because I think he's old enough to take responsibility of his own life. I'm doing it because you have—I feel you deserve a chance.

"THE MINOR: Thank you.

"THE COURT: Okay, so I'm not going to give you appellate rights or anything. Anything else, any questions Miss Winston?

"Ms. WINSTON: None, Your Honor.

"Ms. DAVIS: No.

"THE COURT: Mr. [M.]?

"MR. [M.]: No.

"THE COURT: Miss Gafford, any questions? Do you understand the way things are going?

"Ms. GAFFORD: Yes, I do.

"THE COURT: Okay. Jerry, do you understand?

"THE MINOR: Yeah.

"THE COURT: Okay, good.

"MR. OLMOS: I have no questions, Your Honor.

"THE COURT: All right, fine. [¶] (The proceedings having been concluded, the matter was continued to March 8, 1984.)"

At the hearing on March 8, 1984, appellant received a good progress report from Project Pride. The court then spoke to appellant's uncle and stated: "So I will tell you what I will be willing to do, but, sir, I will tell you I will go by your advice on this thing, Mr. [M.]. If you want, I will set the next review in six months rather than a month, or I can set it in a month. I really look to you for guidance there." The uncle responded that he would like appellant reviewed every month. The court agreed and set the next hearing for April 9. The following then occurred:

"THE COURT: Oh, excuse me. I need your expressed consent, because the boy does have a right to a disposition within two weeks. I need your consent to continuance of disposition, and Geronimo's, otherwise I would have to—

"MR. [M.]: Yes, you have my consent.

"THE COURT: Do I have yours, Geronimo? Do I have your consent to that?

"THE MINOR: Yes.

"THE COURT: And, Mr. Miller, do you join your clients?

"MR. MILLER: Yes, Your Honor.

"THE COURT: Okay. Thank you.

"THE CLERK: So this is going to be for the continued disposition."

On April 10, 1984, another hearing was held. The probation officer reported that while appellant was at Project Pride, he was suspected of a theft, and that after this occurred, appellant was involved in several instances of misbehavior. Project Pride was willing to continue to work with appellant. If appellant was returned to the court for the theft, Project Pride "may" be terminated at that time. After taking statements and hearing arguments the court ruled on the matter:

"THE COURT: Jerry is adjudicated a ward of the Court pursuant to Sections [*sic*] 602 of the Welfare & Institutions Code. The Court finds by clear and convincing evidence that the parents, the uncle, has been incapable of providing the proper supervision, maintenance, training and education that Jerry needs, not that they haven't tried. They have tried, but they can't watch him 24 hours a day. The Court does find that he was tried on formal probation in the custody of his parents. He failed to reform by committing the offenses in the—listed in the 777 petition.

"The Court finds that also by clear and convincing evidence, the continued custody of Jerry with his uncle or parents would be detrimental to his welfare and his welfare requires at this time that custody be taken from them. We have considered and used in Jerry's case the local as restrictive programs, forms of custody, Juvenile Hall, C. K. Wakefield School, and even our Pride Program, and I'm fully satisfied at this time that they are inappropriate, and that the minor can better benefit from the programs provided by the Youth Authority. Therefore, I find that the mental—I do find that Jerry's mental and physical conditions and qualifications are such as to render it probable that he can be benefitted by the reformatory educational discipline or other treatment provided by the Youth Authority and he is hereby committed to the Youth Authority for the term prescribed by law.

"Since he's being taken from the custody of his uncle and his parents, I am not ordering restitution to a victim or to a fund as I understand the law now to be interpreted. However, I hereby impose upon him a fine which— excuse me. This is a 777 violation. It's an original offense. So that has not triggered a fine either. It's a W. & I. 777 violation. So that does not trigger a fine.

"Jerry will remain at Juvenile Hall pending his transfer to intake to the California Youth Authority, and I do grant consent for his medical and dental care while he is in custody of Fresno County Juvenile Hall as set by the Court on September 8th, 1983 and now reiterated under the 777 petition filed January 3rd, 1984, and on the basis of sole wardship of his maximum time of confinement is six years. The offense is not an offense listed under 707b of the W. & I. Code.

"Jerry's total credit for time in custody is 205 days. I'm hereby terminating and setting aside the Court order which originally committed Jerry to C. K. Wakefield School and detaining him in Juvenile Hall—excuse me, that order is stayed pending successful completion of this order, stayed, pending successful completion of this order."

Appellant contends (1) that the continuances made by the court were in violation of the statutory protections set forth in section 777; (2) that he was entitled to a noticed hearing on the theft and other negative behavioral instances before terminating his placement with his uncle and committing him to CYA; and (3) that without proper notice and a hearing, he was not afforded the due process protections built into the juvenile court system.

Respondent contends (1) that the procedures of section 777 were fully complied with because before continuing the matter the court found that the previous orders of the court (commitment to C. K. Wakefield School) had been ineffective; (2) that the court attended closely to appellant's progress by holding hearings every 30 days; and (3) that by obtaining appellant's waiver to an immediate dispositional order, section 777 was not violated.

Section 202 sets forth the purposes of the juvenile court law. It provides: "(a) The purpose of this chapter is to secure for each minor under the jurisdiction of the juvenile court such care and guidance, preferably in the minor's own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the state; to protect the public from criminal conduct by minors; to impose on the minor a sense of responsibility for his or her own acts; to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public; and, when the minor is removed from his or her own family, to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents. This chapter shall be liberally construed to carry out these purposes.

"(b) The purpose of this chapter also includes the protection of the public from the consequences of criminal activity, and to such purpose probation

officers, peace officers, and juvenile courts shall take into account such protection of the public in their determinations under this chapter.

"(c) It is also the purpose of this chapter to reaffirm that the duty of a parent to support and maintain a minor child continues, subject to the financial ability of the parent to pay, during any period during which the minor may be declared a ward of the court and removed from the custody of the parent."

■ A section 777 petition is required to move a minor from a foster home or juvenile hall to CYA. A modification of a previous order which commits a minor to CYA results in a greater intrusion on the minor's liberty. The petition must contain a statement of facts which demonstrate a need for CYA placement. Such petition can only be sustained after notice and hearing. (*In re Ronald E.* (1977) 19 Cal.3d 315, 326 [137 Cal.Rptr. 781, 562 P.2d 684].)

■ In *In re Ruben A.* (1981) 121 Cal.App.3d 671 [175 Cal.Rptr. 649], Ruben A. was found to be a minor within the meaning of section 602 and was placed on probation. A section 777 supplemental petition was filed alleging that Ruben had violated probation. Ruben admitted the allegation and the court found it to be true. The court did not make a finding that Ruben's probation had not been effective in his rehabilitation. The court placed Ruben on probation again and also ordered that he be committed to the Youth Guidance Center for 90 days. The commitment was stayed for approximately three months at which time a "Progress Review" hearing was to take place. "The court warned Ruben if he violated any of the conditions of his probation, 'I'm going to pick you up and put you over in [the Youth Guidance Center] for 90 days. . . .' " (*Id.*, at p. 673.) At the "Progress Review" hearing Ruben received an unfavorable report. There was nothing in the record to indicate that Ruben had advance or formal notice of the contents of the report. Ruben objected to the hearing as violative of section 777. Without finding that Ruben had violated his probation as alleged in the "progress report," the court ordered Ruben committed to the Youth Guidance Center. (*Id.*, at p. 674.) The appellate court reversed Ruben's commitment because a section 777 supplemental petition requires the court to make an express finding that the previous order of the court has been rehabilitatively ineffective.

The court stated: "This case is a prime example how such a procedure can create a nightmarish situation, all in an effort to sidestep the requirements of section 777. Use of this procedure resulted in Ruben being taken from the custody of his parents and committed to a more restrictive level of custody on the basis of charges (truancy, intoxication, failure to obey

probation officer and curfew violations) for which he received no notice and upon which no factual findings were made by the court. In addition, Ruben had no notice the district attorney intended to seek more restrictive custody. These results, in addition to the court's failure to find Ruben's previous probation was ineffective, are in derogation of the law [citations], and any procedural device which allows them to occur should not be used." (*Id.*, at p. 675.)

In *In re Willie T.* (1977) 71 Cal.App.3d 345 [139 Cal.Rptr. 439], Willie T. was adjudged to be a minor within the meaning of section 602. His dispositional hearing was held on April 21, 1976. The court continued the disposition for three months, imposing numerous conditions upon Willie, while allowing him to remain home with his mother. At the July 21 hearing, Willie was represented by counsel, and he objected to the procedure used as violative of section 777. The probation officer's report submitted at this time indicated Willie had been truant a number of times. The court continued the matter for three weeks to receive a psychiatric clinical report. At the next hearing, the referee found that home placement with probation was not working satisfactorily for Willie's rehabilitation. He ordered that Willie be removed from his mother, and be placed in a facility where he could receive weekly psychiatric counseling and remedial education. (*Id.*, at p. 352.) The appellate court held that the procedure used by the referee was improper: "[T]he order of April 21 purporting to continue the disposition for 3 months violated the 45-day time limit in section 702. Although the order was intended to be for appellant's benefit, the referee's good intentions cannot justify disregard of the legislative intent that the disposition be made within the 45-day time limit. Viewed realistically, the continuance was an order placing appellant on probation . . ., the violation of which resulted in appellant's being removed from the custody of his mother." (*Id.*, at p. 353.)[5] The court also held that Willie had not waived

---

[5]Section 702 provides: "After hearing such evidence, the court shall make a finding, noted in the minutes of the court, whether or not the minor is a person described by Section 300, 601, or 602. If it finds that the minor is not such a person, it shall order that the petition be dismissed and the minor be discharged from any detention or restriction theretofore ordered. If the court finds that the minor is such a person, it shall make and enter its findings and order accordingly, and shall then proceed to hear evidence on the question of the proper disposition to be made of the minor. Prior to doing so, it may continue the hearing, if necessary, to receive the social study of the probation officer or to receive other evidence on its own motion or the motion of a parent or guardian for not to exceed 10 judicial days if the minor is detained during such continuance, and if the minor is not detained, it may continue the hearing to a date not later than 30 days after the date of filing of the petition. The court may, for good cause shown continue the hearing for an additional 15 days, if the minor is not detained. The court may make such order for detention of the minor or his release from detention, during the period of the continuance, as is appropriate.

"If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony."

the issue on appeal because he did not object to the continuance at the first dispositional hearing. ■ "Acceptance of probation does not constitute waiver of procedural requirements for revocation of probation." (*Id.*, at p. 354.)

■ Respondent attempts to distinguish these cases from the instant case. In *Ruben A.*, the court did not find that the previous order had been ineffective. In the instant case the court had found that the C. K. Wakefield School commitment had been ineffective. The second distinguishing factor that respondent sets forth is that Ruben's and Willie's hearings were continued for 90 days. In the instant case the hearing was continued for only 30 days, therefore demonstrating the court's close attention to appellant's progress. Thirdly, the continuances in Ruben's and Willie's cases were ordered without the minor's waiver. Appellant made a waiver in the instant case. Finally, respondent asserts that unlike the minors in the previous cases, appellant was aware that any bad reports would result in a CYA commitment, thus he had notice.

Respondent's last distinguishing point is factually incorrect. In *Ruben A.*, the minor was told that if he violated any conditions he would be sent to the Youth Guidance Center. (*In re Ruben A., supra,* 121 Cal.App.3d 671, 673.) The court in *Willie T.* stated that " '[h]e [Willie T.] knew specifically that he had certain conditions that he had to fulfill and if he didn't fulfill those conditions, he'd have to answer for them on the day of the disposition.' " (*In re Willie T., supra,* 71 Cal.App.3d 345, 352.)

Respondent's first two distinguishing factors, that the court found the Wakefield commitment ineffective and that the continuances were for only 30 days as compared to 90 days, do not lend support to their position that section 777 has been complied with.

■ "Where a previous disposition, instituted following a finding a minor is a person described within section 602, has not been effective, a section 777 petition is the procedure to be utilized to reformulate a new dispositional plan." (*In re Scott K.* (1984) 156 Cal.App.3d 273, 276 [203 Cal.Rptr. 268].)

■ It is clear that regardless of the fact that the court had previously held that the Wakefield commitment had been ineffective, and continued the hearing for only 30 days at a time, the court was in essence circumventing section 777. The court recognized this when it stated "I don't have the authority, even as a Judge to do it this way, but only with your consent." Such circumvention has been repeatedly frowned upon.

*II. Appellant did not waive his right to proper supplemental proceedings pursuant to section 777*

■ When appellant consented to a continuance of his dispositional hearing he, in essence, gave up his right to contest any questions involving his behavior in the interim period following his release from C. K. Wakefield, and allowed the court to commit him to CYA without a proper hearing and evidentiary findings regarding this interim behavior. ■ A juvenile subject to a 777 petition should be accorded the same constitutional rights that he has on an original petition. (*In re Arthur N.* (1976) 16 Cal.3d 226, 240 [127 Cal.Rptr. 641, 545 P.2d 1345].) These rights include notice, counsel, confrontation and cross-examination, and a right against self-incrimination. (*In re Francis W.* (1974) 42 Cal.App.3d 892, 897-898 [117 Cal.Rptr. 277].)

■ Appellant was told that if he stepped out of line he would be sent to CYA. Appellant was told that his consent was needed in order to continue the dispositional hearing. He was not told that by agreeing to this type of continuation he would be giving up his constitutional rights, and a noticed hearing regarding his behavior while in the custody of his uncle and attending Project Pride. It may be argued that by giving his consent to a continued dispositional hearing, appellant was aware that he was waiving a subsequent section 777-type hearing and all of its attendant rights. ■ Whether an intelligent waiver has been made normally turns upon the particular facts and circumstances of the case. (*In re D. A. S.* (1971) 15 Cal.App.3d 283, 286 [93 Cal.Rptr. 112].) To be an intelligent waiver there must also be an intelligent understanding of its consequences. (*Id.,* at p. 287.) ■ Appellant was told that if he did not behave properly, he would be sent to CYA forthwith. Although appellant had been involved in juvenile proceedings before, it cannot be said that by giving his consent to a continuance he was aware that he would be giving up his constitutionally mandated rights to contest allegations of subsequent bad behavior.

*III. Appellant was prejudiced by the court's failure to follow supplemental procedures pursuant to section 777*

■ Is it reasonably probable that appellant would have been committed to CYA in the absence of the error of not following supplemental procedures pursuant to section 777? Respondent asserts that appellant was going to be sent to CYA and, except for the golden opportunity presented by the judge, would have been so committed. Thus, he was just given a temporary reprieve. However, by utilizing this novel procedure, the court was circumventing the normal section 777 procedures. As we have seen, such a result has been strongly criticized. In judging prejudice, we must

examine what happened at the final dispositional hearing, not the original dispositional hearing. Clearly, appellant was prejudiced. If appellant had not waived the hearing, and had successfully contested the allegations, it is reasonable to assume the judge would have continued to allow appellant to remain in his uncle's custody and attend Project Pride. At the prior dispositional hearing, the judge saw fit to give appellant one more chance before committing him to CYA. ▇▇▇ Commitment to CYA is a drastic change in the status of a ward. (*In re Arthur N., supra,* 16 Cal.3d 226, 237.) A placement in CYA should be a placement of last resort. (*Ibid.*)

CONCLUSION

▇▇▇ When the court continued the dispositional hearing, it was circumventing the procedures set forth in section 777. Appellant did not waive his right to proper supplemental proceedings. Appellant was prejudiced by not being allowed to contest the allegations. In light of the policy of committing a minor to CYA only as a last resort, it is reasonably probable that a result more favorable to appellant would have occurred absent the erroneous procedures utilized herein.

The judgment is reversed.

Hanson (P. D.), Acting P. J., and Woolpert, J., concurred.