122 Cal.Rptr.2d 780 (2002)
100 Cal.App.4th 726
In re ELDRIDGE T., a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
Eldridge T., Defendant and Appellant.
No. A095878.
Court of Appeal, First District, Division Four.
July 29, 2002.
Review Granted October 30, 2002.
*781 Eric Borgerson, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, Stan M. Helfman, Supervising Deputy Attorney General, John R. Vance, Jr., Deputy Attorney General, for Plaintiff and Respondent.
KAY, P.J.
The juvenile court ordered a ward placed in the custody of the probation officer in anticipation that the ward would be placed with a strict residential program where he could receive counseling and treatment. After the probation department was unable to find a program which would accept the ward and address his needs, the prosecuting attorney petitioned that the previous placement be "modified" to a commitment to the California Youth Authority (CYA), which the probation officer believed was the only placement which could deal with the ward's problems. The juvenile court agreed.
Prior to the enactment of Proposition 21, titled the Gang Violence and Juvenile Crime Prevention Act of 1998 and approved by the voters at the March 7, 2000, Primary Election (Proposition 21), Welfare and Institutions Code section 777[1] allowed a juvenile court to impose a more restrictive placementincluding a commitment to the CYAbased solely on a finding that "the previous disposition has not been effective in the rehabilitation" of the ward. This appeal compels us to conclude that this option is no longer available to a juvenile court; the amendment of section 777 by Proposition 21 now requires that a more restrictive placement can be made only if the ward has violated a court order or committed "a violation of a condition of probation not amounting to a crime." As neither of these predicates was established, we reluctantly conclude that the current amended language of section 777 commands reversal of the CYA commitment.

BACKGROUND
In December 1998, the juvenile court sustained a petition in which it was alleged that 15-year-old Eldridge T. committed a lewd and lascivious act upon a five-year-old girl (Pen.Code, § 288, subd. (a)). In March 1999, the court accepted the recommendations of the probation department that the delinquency proceeding be suspended, that an ongoing dependency be continued, and that Eldridge be placed on informal probation while remaining in foster care; the matter was continued for final disposition.
Several placements in foster care ended unsuccessfully because of Eldridge's aggressive behavior. At a dispositional hearing conducted in June 2000, the juvenile *782 court accepted the recommendations of the probation department that the dependency proceeding be dismissed, that Eldridge be declared a ward and placed on probation, that custody be given to the probation department for suitable placement, and that Eldridge "engage in a program of counseling including but not limited to the sex offender program."
After months of the probation officer unsuccessfully attempting to get Eldridge placed in a residential treatment program, the prosecuting attorney filed a petition entitled "W & I Sections 777(a)/778 Petition" for the purpose of seeking "an order changing and modifying the previous order of the court removing the Minor from the custody of his parent and or guardian or relative, and directing placement in a suitable group/foster home because the disposition of the court cannot be carried out. The Probation Department is unable to provide a suitable placement."
The hearing on the petition was conducted on May 21 and July 3, 2001. In May the court heard testimony from the probation officer concerning efforts to find a placement. Two programs had initially accepted Eldridge but then discharged him and refused readmission. Six other programs rejected him outright for various reasons. According to the probation officer, "we've exhausted options for residential sex-offender treatment.... [H]e could be referred to other programs that do not offer that particular service. But he was court ordered for that treatment, so I have not looked at others."
In his argument Eldridge's counsel stated: "I would like to invite the Court's attention to the petition, which on its face says that they were unable to provide a suitable placement. It's my understanding of Section 777 as amended that that would not authorize themI don't think they properly alleged the appropriate factsto bring the jurisdiction of the Court under 777 toupgrade and to send him off to the Youth Authority ... under 777 as it's presently crafted. [¶] Similarly, they have also brought a petition under 778. A petition under 778, as I understand it, is a tool generally used by the defense or by the family members because of some changed circumstances and that that's a vehicle for lessening the severity of the placement. But I do not believe that a 778 can be used as a vehicle for increasing the severity of placement, and I invite the Court's attention to [In re Ronald W. (1985) 175 Cal. App.3d 199, 220 Cal.Rptr. 557], for that proposition."
After hearing argument from the prosecuting attorney, the court addressed the statutory issue raised by Eldridge's counsel: "I am interested in your comments about whether or not we can even proceed in this fashion under a 777(a) anymore in light of the changes that went into effect in the law in January of 2001 [sic]. It does appear that the law has now been modified to indicate that the only ground for a[777], under Subsection 1, is that the minor has violated an order of the court. And under Subsection 2, it states that that violation of the condition of probation need not amount to a crime .... And therefore, it does seem to me that, under the wording of the statute, we have no choice but to turn, then to [778] in instances where ... the petition actually seeks to modify placement." The court was also "interested in your comments, Mr. Carruthers, that 778 can only be used when the desire is to seek a less-restricted placement. I don't find that in the plain wording of the statute. [¶] I have looked up that case that you cited, [I]n re Ronald W., and it does talk about that that's a preferred procedure. It does not say 778 is, on its face, limited to instances where the petition is seeking a less restrictiverestricted placement. In *783 fact, given the modification to 777(a) and Prop 21 ... it seems to me that 778 is now much more analogous to a 388 petition under the 300 system, and that also need not be limited to a less-restricted placement. [¶] So it does seem to me that we are proceeding today under a 778.... [¶] ... [¶][W]hether or not my analogy to 388 is accurate or not is irrelevant. What is important is what does 778 permit us to do. And under the plain reading of the statute, it appears to me that it does allow the petitioner to seek a modification; and there is no restriction in its terms that the modification can only be to a less-restrictive placement."
The court then ruled on the prosecuting attorney's petition: "Therefore, I do find that ... the court's prior order has been ineffective in that a review of this court's file ... demonstrates that Eldridge has long been in need of very intensive sex-offender treatment.... His need for that still continues; and yet, because of his continuing behavior problems, there have been no placements willing to accept him. [¶] And therefore, I am setting aside the prior order."
The July hearing concerned the actual disposition. After hearing a number of testimonials in Eldridge's behalf, the juvenile court stated its reasons for ordering a CYA commitment: "When we go through this file, what we see is a young man who has been presented with numerous opportunities to receive specialized treatment and counseling both for his emotional disturbance and for his sex-offender behavior. And repeatedly, what we are told is that, over and over again in the placements that he has received, he has become aggressive; he has been threatening; and his sexual acting-out has escalated. He has violated program rules by bringing in pornography, by engaging in sexual behavior with other residents. And there is a good reason why it is described as his behavior putting other children at risk. [¶] ... the behavior that Eldridge has demonstrated thus far is in serious need of rehabilitation so [that] he does not present a definite threat to other children and other people. He's had numerous opportunities to deal with this. And it is very regrettable that we are in the place today where he has been referred to every high-level sex-offender treatment program that we have within the state of California; and we were told as early as February of this year that none of them could meet Eldridge's treatment needs. [¶] ... the California Youth Authority does have sex-offender treatment programs and ... they do have the ability to provide psychological assistance. It might not be the same level as that that could be provided in a residential psychiatric facility; but, quite frankly, that would be the only other alternative that I could contemplate for Eldrige [sic]. And his needs don't rise to that level of a locked psychiatric facility. However, he is clearly in need of a custodial setting with high structures where he can be assured that his behavior will not pose a threat to others." For these reasons, the court ordered Eldridge committed to CYA for a period not to exceed eight years. Eldridge filed a timely notice of appeal.

REVIEW
Eldridge contends that the juvenile court had no jurisdiction because neither section 777 nor section 778 may be used to impose a more restrictive placement, specifically a commitment to CYA, if while on probation, the ward has neither committed a new offense nor violated a condition of probation. In light of recent changes to section 777, we must agree.
Section 777 deals with the circumstances in which "An order changing or modifying a previous order by removing a minor *784 from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private institution, or commitment to a county institution, or an order changing or modifying a previous order by directing commitment to the Youth Authority" can be made. Prior to enactment of Proposition 21 in March of 2000, the operation of this procedure was clear. An order changing a ward's placement could be made "only after noticed hearing upon a supplemental petition." (Former § 777, subd. (a).) The supplemental petition for such an order could be filed by the probation officer in which it was alleged that "a minor has been declared a ward" and "the previous disposition has not been effective in the rehabilitation or protection of the minor." (Former § 777, subd. (a)(1).) Subdivision (a)(2) provided for modification upon petition by the probation officer or the prosecuting attorney (after consultation with the probation officer) where the ward was alleged to have committed "a violation of a condition of probation not amounting to a crime" the details of which alleged in the petition were "sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor." Subdivision (a)(2) also provided for a petition from the prosecuting attorney "after consulting with the probation officer, if the ... petition alleges a violation of a condition of probation not amounting to a crime," but again with the proviso that the petition "contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor."
Section 778 has at all pertinent times provided in relevant part that "Any parent or other person having an interest in a child who is a ward of the juvenile court ... may, upon grounds of change of circumstance or new evidence, petition the court ... for a hearing to change, modify, or set aside any order of court previously made...." Prior to Proposition 21, the interplay between these statutes was that section 778 authorized modification of placement orders, but not if the modification was for a more restrictive placement; only section 777 could achieve that (e.g., In re Kazuo G. (1994) 22 Cal.App.4th 1, 6, 27 Cal.Rptr.2d 155; In re Martin L. (1986) 187 Cal.App.3d 534, 542, 232 Cal.Rptr. 43; In re Ronald W. (1985) 175 Cal.App.3d 199, 203-204, 220 Cal.Rptr. 557; In re Geronimo M. (1985) 166 Cal.App.3d 573, 584, 212 Cal.Rptr. 532 ["A section 777 petition is required to move a minor from a foster home or juvenile hall to CYA"]), and only after the court made an express finding that the previous placement had been rehabilitatively ineffective (In re Michael B. (1980) 28 Cal.3d 548, 552-553, 169 Cal.Rptr. 723, 620 P.2d 173; In re Jorge Q. (1997) 54 Cal.App.4th 223, 231-232, 62 Cal. Rptr.2d 535).
Proposition 21 made no changes to section 778, but several changes to section 777. It replaced the requirement of a supplemental petition with a simple "notice." It did away with the requirement of proof beyond a reasonable doubt (see In re Arthur N. (1976) 16 Cal.3d 226, 228, 127 Cal.Rptr. 641, 545 P.2d 1345), lowering the burden to a preponderance of the evidence. (§ 777, subd. (c).) It allowed the admission of "reliable hearsay evidence." (Ibid.) It did away with the requirement that, in addition to a finding that the minor was in violation of a court order or with a condition of probation, the court would have to find also that the prior disposition was ineffective. The problem is that it also did away entirely with the section (former § 777, subd. (a)(1)) that authorized a probationer's commitment to CYA upon a finding only that the prior *785 disposition was ineffective, even without any violation of court order or condition of probation.
The impact of Proposition 21 is also evident in changes made to rule 1430(e) of the California Rules of Court by the Judicial Council. Prior to Proposition 21 the rule provided: "(e) [Petition for modification hearing (§§ 388, 778) ] A petition for modification hearing shall be used if there is a change of circumstances or new evidence that may require the court to: [¶] (1) Change, modify, or set aside an order previously made; or [¶] (2) Terminate the jurisdiction of the court over the child." Subsequent to Proposition 21 this rule was amended to read in pertinent part: "(e) [Filing of petition (§ 388) ] A petition for modification hearing may be filed by: [¶] (1) The probation officer, the parent or guardian, the child, the attorney for the child, or any other person having an interest in a child who is a ward if the requested modification is not for a more restrictive level of custody...."[2] (Italics added.)
The remarks of Eldridge's counsel were quoted at length in order to establish he objected to the juvenile court that section 777, the ostensible basis for the modification petition, was not the proper basis upon which the previous dispositional order could be modified, simply because authorities were unable to secure what they considered an appropriate placement short of CYA. There is no dispute that following the initial disposition Eldridge did nothing amounting to misconduct in the sense that he "violated" either "an order of the court" or "a condition of probation." (§ 777, subds.(a)Q), (a)(2); see In re Marcus A, supra, 91 Cal.App.4th 423, 426-427, 109 Cal.Rptr.2d 919.) That the recommendations for a CYA commitment had the backing of the probation department, that the court was increasingly resigned to a CYA commitment for lack of any realistic alternative, and that Eldridge had been in juvenile hall for almost a year (let out only for unsuccessful attempts at placement)all of this would have constituted a persuasive case that the original disposition had not been effective in rehabilitating the minor and that he could be sent to CYA, under the previous language of section 777. In the wake of Proposition 21, however, this showing was essentially irrelevant. Modification under section 777 now requires proof that the ward violated either an order of the court or a condition of probation. The probation officer, the prosecuting attorney, even the Attorney General on this appeal, none have so much as hinted that Eldridge has actually done anything that would satisfy either of these criteria. Although this would seem to be a textbook example of an ineffective disposition, that criterion is no longer within the language of section 777. This court cannot rewrite the statute to put back in that which the voters took out without usurping the legislative prerogative of the voters. (County of Santa Clara v. Perry (1998) 18 Cal.4th 435, 446, 75 Cal.Rptr.2d 738, 956 P.2d 1191; In re Hoddinott (1996) 12 Cal.4th 992, 1002, 50 Cal.Rptr.2d 706, 911 P.2d 1381; California Fed. Savings & Loan Assn. v. City of Los Angeles (1995) 11 Cal.4th 342, 348-349, 45 Cal.Rptr.2d 279, 902 P.2d 297.) Whether the omission was the result of deliberate intention or an oversight in drafting is not a question we are required to decide; in either event the conclusion would be the same: "`It is a prime rule of [statutory] *786 construction that the legislative intent underlying a statute must be ascertained from its language; if the language is clear, there can be no room for interpretation, and effect must be given to its plain meaning. [Citations.] "An intent that finds no expression in the words of the statute cannot be found to exist. The courts may not speculate that the legislature meant something other than what it said. Nor may they rewrite a statute to make it express an intention not expressed therein."' [Citation.]" (Mutual Life Ins. Co. v. City of Los Angeles (1990) 50 Cal.3d 402, 412, 267 Cal.Rptr. 589, 787 P.2d 996; accord, Anderson v. I.M. Jameson Corp. (1936) 7 Cal.2d 60, 67-68, 59 P.2d 962; Seaboard Acceptance Corp. v. Shay (1931) 214 Cal. 361, 365-366, 5 P.2d 882.)[3]
For a number of reasons we do not agree with the juvenile court and the Attorney General that section 778 will now substitute for what section 777 used to do. First, it flies in the face of the respective roles assigned the two statutes prior to Proposition 21 (e.g., In re Ronald W., supra, 175 Cal.App.3d 199, 203-204, 220 Cal. Rptr. 557; In re Geronimo M., supra, 166 Cal.App.3d 573, 584, 212 Cal.Rptr. 532) and there is nothing in the language of the two statutes after Proposition 21 indicating that such a change was intended. Second, it is and always has been section 777, not section 778, which addresses the specific subject of the juvenile court's power to make "an order changing or modifying a previous order by directing commitment to the Youth Authority" (italics added). There is not a single mention of section 778 in the text of Proposition 21 and the accompanying ballot pamphlet materials submitted to the voters. An intent to expand the scope of section 778 therefore cannot be accepted. (E.g., In re Hoddinott, supra, 12 Cal.4th 992, 1002, 50 Cal. Rptr.2d 706, 911 P.2d 1381; Mutual Life Ins. Co. v. City of Los Angeles, supra, 50 Cal.3d 402, 412, 267 Cal.Rptr. 589, 787 P.2d 996.) Third, construing section 778 to overlap and duplicate section 777 would upset the statutory scheme and introduce a significant measure of surplusage, a result courts strive to avoid.[4] (E.g., County of Santa Clara v. Perry, supra, 18 Cal.4th 435, 442, 75 Cal.Rptr.2d 738, 956 P.2d 1191; People v. Loeun (1997) 17 Cal.4th 1, 8-9, 69 Cal.Rptr.2d 776, 947 P.2d 1313.) One could even conclude that the novel construction of section 778 urged here would make section 777 superfluous, an even less acceptable result. (E.g., People v. Aguilar (1997) 16 Cal.4th 1023, 1030, 68 Cal.Rptr.2d 655, 945 P.2d 1204; Dix v. Superior Court (1991) 53 Cal.3d 442, 459, 279 Cal.Rptr. 834, 807 P.2d 1063.)
Whether it was wise or sound policy to amend section 777 so that it would not reach the situation shown here or mere inadvertence, it is a matter on which the voters' decision is conclusive. The language they adopted is plain and unambiguous. That language requires that a ward "violate" either "an order of the court" or "a condition of probation." (§ 777, subds.(a)(1), (a)(2); In re Marcus A., supra, 91 Cal.App.4th 423, 426-427, 109 Cal. Rptr.2d 919.) Because the ward here met neither of these requirements, section 777 *787 does not authorize his commitment to CYA. Because section 777 was and remains the basis for adopting a more restrictive placement for a ward, specifically a placement to CYA (see Cal. Rules of Court, rule 1430(c) & (e)), the juvenile court erred in using section 778 as authority for modifying the existing disposition to a CYA commitment. Although the logic of Eldridge's commitment is unassailable, the authority claimed for it is unavailable.
This conclusion makes it unnecessary to discuss other contentions raised by the parties.[5]
The order of commitment is reversed.
We concur: SEPULVEDA and RIVERA, JJ.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] Both before and after enactment of Proposition 21, rule 1430(c) has made it clear that a CYA commitment is the most restrictive placement possible. (See also In re Arthur N., supra, 16 Cal.3d 226, 237, 127 Cal.Rptr. 641, 545 P.2d 1345; In re Donnell L. (1989) 212 Cal.App.3d 185, 190, 260 Cal.Rptr. 396.)
[3] Although these principles were stated in the context of construing statutes enacted by the Legislature, they are equally applicable to measures adopted by initiative. (E.g., Day v. City of Fontana (2001) 25 Cal.4th 268, 272, 105 Cal.Rptr.2d 457, 19 P.3d 1196; Whitman v. Superior Court (1991) 54 Cal.3d 1063, 1072, 2 Cal.Rptr.2d 160, 820 P.2d 262.)
[4] In light of our conclusion that section 778 cannot pinch hit for section 777, and considering the amendment to California Rules of Court, rule 1430(e) quoted above, the juvenile court's attempt to analogize section 788 to section 388 cannot be deemed persuasive.
[5] We do note our puzzlement by Eldridge's claim that application of the version of section 777 amended by Proposition 21 violates constitutional ex post facto prohibitions. The amended version benefits him by preventing his commitment to the CYA, whereas the former version of section 777 would have allowed it. The new version of section 777 entails no ex post facto violation for this appellant. (See Tapia v. Superior Court (1991) 53 Cal.3d 282, 300-301, 279 Cal.Rptr. 592, 807 P.2d 434.)