[No. B102128. Second Dist., Div. Seven. Apr. 14, 1997.]

In re JORGE Q., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JORGE Q., Defendant and Appellant.

## COUNSEL

Jonathan B. Steiner and Dee A. Hayashi, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Susan D. Martynec and G. Tracey Letteau, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

JOHNSON, J.—Jorge Q. appeals from the order declaring him a ward of the juvenile court (Welf. & Inst. Code, § 602) by reason of his having committed attempted second degree robbery with the use of a firearm and grand theft from the person. (Pen. Code, §§ 664/211; 12022.5, subd. (a); 487, subd. (c).) He contends: "I. Appellant's waiver of his procedural due process rights under Welfare and Institutions Code Section 777 was incomplete and therefore invalid. II. The failure of the juvenile court to declare whether count 2 [grand theft] was a felony or misdemeanor requires a remand for that finding."

We agree appellant has not waived later supplemental petition proceedings and the juvenile court was required to declare the grand theft offense, a "wobbler," a felony or misdemeanor.

### FACTS

On January 6, 1996, Miguel Espinoza was in the alley behind his Main Street, Los Angeles, residence with his pregnant wife. Appellant approached and pushed Espinoza. He yanked the chain off Espinoza's neck and fled. On January 22, 1996, appellant demanded a coat and money from Espinoza's

cousin, Armando Cuenca, as Cuenca left a barbershop in the 4200 block of Broadway in Los Angeles. When Cuenca refused to comply with the demands and stepped back into the barbershop, appellant displayed a handgun and wanted to know the identity of Cuenca's "barrio." Security guards arrived and appellant left. Cuenca and Espinoza later identified appellant as their assailant in a six-pack photographic display.[1]

At disposition, the juvenile court read and considered a social study indicating 16-year-old appellant, at age 13, was counseled and released after a contact for throwing a substance at a car. The same year, he was given a Welfare and Institutions Code section 654 informal grant of probation after a contact for theft. Appellant's parents were divorced. Appellant was attending continuation school.

The juvenile court was in a quandary over an appropriate disposition. The juvenile court did not wish to send appellant home on probation since the offense was serious and there was a threat to the victims who lived in the same neighborhood. The juvenile court stated it had considered suitable placement, but was unaware of an appropriate suitable placement. In addition, short-term camp involved a shorter confinement period, about 12 to 14 weeks.

The juvenile court admonished appellant's mother, who insisted appellant was not gang involved, had committed no wrongdoing and that this was his first time in court. The juvenile court told the mother it was of no benefit to appellant for her to deny appellant was engaging in misconduct and gang activity. The juvenile court questioned appellant's father and discovered the father lived in Southgate, away from appellant's neighborhood, and was in contact with his son. Also, the father had remarried. The juvenile court inquired if the father would have appellant live with him until the end of the school year. The father said yes.

The juvenile court said, in that event, the juvenile court was ordering suitable placement with the father. The juvenile court said it did not want to send appellant to camp since appellant had "possibilities" and, in camp, appellant would be with other gang members.

The juvenile court admonished appellant the conditions of the suitable placement would be "very very severe." If appellant violated the terms of

---

[1] At the adjudication, the victims recanted their earlier statements to police. They claimed appellant did not commit the offenses. Appellant's identity as the assailant was proved by the victims' out-of-court statements to the police and the identifications made during the photographic display. Espinoza explained he was frightened of appellant since "they get accused and then they take revenge. They get arrested and then six months later they are out again."

suitable placement, he would be sent to camp. The juvenile court ordered appellant's care, custody and control be taken from the parents, and ordered a "camp stay" for 90 days on terms and conditions, including: (1) he was suitably placed in his father's home in Southgate; (2) he had a 7 p.m. curfew; (3) he was not to stay away from his father's residence for over 24 hours without permission from the probation officer; and (4) he was not to associate with fellow gang members or engage in gang activity. The juvenile court computed the theoretical maximum period of confinement as 13 years 8 months.[2]

After the juvenile court made its order, the juvenile court had the following colloquy with appellant personally:

"THE COURT: Okay. [¶] Now . . . listen very carefully [to] what I am saying now. [¶] Do you agree that if you break any laws or if you violate any of the terms and conditions of your probation, and it comes to [the juvenile court's] attention that [the juvenile court] may then make the determination that it's for your benefit to send you to camp, send you to camp without a hearing. [¶] Do you understand, agree to that?

"THE MINOR: You are sending me to camp right now?"

"THE COURT: Send you to camp if you violate any laws or break any condition of probation.

"[MINOR'S COUNSEL]: May I have a moment, Your Honor[?]

"THE COURT: Yes.

"(Pause.)

"THE COURT: Do you understand?

"THE MINOR: Yes."

The juvenile court ordered appellant to have no contact with victims or their families. The juvenile court told appellant he was not to return to his neighborhood for three months under any condition, even to work. The juvenile court set the matter for a three-month appearance date.

The juvenile court explained the juvenile court was giving appellant a "big break" by not sending him to camp. The juvenile court remarked counsel had

---

[2]The minute order stated the grand theft offense was a felony.

demonstrated there was a "good side" to appellant. Appellant was smart and doing well in school. Appellant should continue to attend the same school. Appellant should also make sure his gang did not retaliate against the victims. The juvenile court stated it wanted appellant to have a complete three-month break in his association with his fellow gang members.

DISCUSSION

### I. Appellant Did Not Waive the Procedural Protection Afforded Him Under Welfare and Institutions Code Section 777.

■ The contention the waiver of appellant's statutory and due process rights under Welfare and Institutions Code section 777 was invalid has merit.[3]

### A. The order is ripe for decision.

■ Respondent urges this court to determine the waiver issue is not ripe for consideration. Respondent reasons appellant has not violated the conditions of his probation and may never do so, and he has not been committed to a more restrictive level of confinement. Thus, the issue has not "reached, . . . the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." (*California Water & Telephone Co.* v. *County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 [61 Cal.Rptr. 618].)

The optimum time to address the waiver issue is now. The facts are sufficiently concrete to allow a useful decision. Furthermore, the case involves an important procedural issue which has court-wide impact and there is a likelihood of recurring litigation involving the same issue. An appeal from a later order automatically lifting the stay is not adequate to remedy the error. Appellant will have completed his camp placement long before a later appeal resolves the issue. Later, he may be limited to addressing only the jurisdictional defects in the order. (See *In re Ronald. E.* (1977) 19 Cal.3d 315, 320-326 [137 Cal.Rptr. 781, 562 P.2d 684]; *In re Gerald B.* (1980) 105 Cal.App.3d 119, 123, fn. 4 [164 Cal.Rptr. 193].) A justifiable controversy is presented here.

### B. Welfare and Institutions Code section 777 and the preceding decisional law.

■ A minor subject to a 777 petition is accorded the same constitutional rights that he has during the adjudication of the original petition. (*In re*

---

[3]Statutory references unless otherwise noted are to the Welfare and Institutions Code.

*Arthur N.* (1976) 16 Cal.3d 226, 240 [127 Cal.Rptr. 641, 545 P.2d 1345]; *In re Geronimo M.* (1985) 166 Cal.App.3d 573, 587 [212 Cal.Rptr. 532].)[4] The safeguards accompanying a section 777 hearing are the filing of a

---

[4]Section 777 provides:

"An order changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private institution or commitment to a county institution, or an order changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after noticed hearing upon a supplemental petition.

"(a) The supplemental petition shall be filed as follows: [¶] (1) By the probation officer where a minor has been declared a ward of the court or a probationer under Section 601 in the original matter and shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor. [¶] (2) By the probation officer or the prosecuting attorney, after consulting with the probation officer, if the minor is a court ward or probationer under Section 602 in the original matter and the supplemental petition alleges a violation of a condition of probation not amounting to a crime. The petition shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor. The petition shall be filed by the prosecuting attorney, after consulting with the probation officer, if a minor has been declared a ward or probationer under Section 602 in the original matter and the petition alleges a violation of a condition of probation amounting to a crime. The petition shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor. [¶] (3) Where the probation officer is the petitioner pursuant to paragraph (2), if prior to the attachment of jeopardy at the time of the jurisdictional hearing it appears to the prosecuting attorney that the minor is not a person described by subdivision (a) or that the supplemental petition was not properly charged, the prosecuting attorney may make a motion to dismiss the supplemental petition and may request that the matter be referred to the probation officer for whatever action the prosecuting attorney or probation officer may deem appropriate.

"(b) Notwithstanding the provisions of subdivision (a), if the petition alleges a violation of a condition of probation and is for the commitment of a minor to a county juvenile institution for a period of 30 days or less, or for a less restrictive disposition, it is not necessary to allege and prove that the previous disposition has not been effective in the rehabilitation or protection of the minor. However, before any period of commitment in excess of 15 days is ordered, the court shall determine and consider the effect that an extended commitment period would have on the minor's schooling, including possible loss of credits, and on any current employment of the minor. In order to make such a commitment the court must, however, find that the commitment is in the best interest of the minor. The provisions of this subdivision may not be utilized more than twice during the time the minor is a ward of the court.

"(c) Upon the filing of a supplemental petition, the clerk of the juvenile court shall immediately set the same for hearing within 30 days, and the probation officer shall cause notice of it to be served upon the persons and in the manner prescribed by Sections 658 and 660.

"(d) An order for the detention of the minor pending adjudication of the petition may be made only after a hearing is conducted pursuant to Article 15 (commencing with Section 625) of this chapter.

"(e) The filing of a supplemental petition and the hearing thereon shall not be required for the commitment of a minor to a county institution for a period of 30 days or less pursuant to an original or a previous order imposing a specified time in custody and staying the enforcement of the order subject to subsequent violation of a condition or conditions of

supplemental petition, a noticed hearing at which appellant has the rights to counsel, to confrontation and to the cross-examination of witnesses, and against self-incrimination, and in which the charged misconduct must be proved beyond a reasonable doubt. (*In re Arthur N.*, *supra*, 16 Cal.3d at p. 240; *In re Ronnie P.* (1992) 10 Cal.App.4th 1079,1084-1086 [12 Cal.Rptr.2d 875]; *In re Martin L.* (1986) 187 Cal.App.3d 534, 541-543 [232 Cal.Rptr. 43]; *In re Geronimo M.*, *supra*, 166 Cal.App.3d at pp. 586-587; *In re Francis W.* (1974) 42 Cal.App.3d 892, 897-898 [117 Cal.Rptr. 277]; cf. *In re Ronald E.*, *supra*, 19 Cal.3d at pp. 321, 326; *In re Michael V.* (1986) 178 Cal.App.3d 159, 166-168 [223 Cal.Rptr. 503].) An admission to the allegations of a section 777 petition is subject to the requirements of *Boykin* v. *Alabama* (1969) 395 U.S. 238 [89 S.Ct. 1709, 23 L.Ed.2d 274] and *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]. (*In re Ronald E. supra*, 19 Cal.3d at pp. 321, 324-325; *In re Francis W.*, *supra*, 42 Cal.App.3d at p. 898; see *In re Arthur N.*, *supra*, 16 Cal.3d at p. 240; *In re Geronimo M.*, *supra*, 166 Cal.App.3d at p. 587.)

*In re Ronald E.*, *supra*, 19 Cal.3d 315, explained the nature of the section 777 proceedings, as follows: "Supplemental petitions are authorized in juvenile proceedings by section 777, which provides in part that 'an order changing or modifying a previous order by directing commitment to [a higher level of restriction] shall be made only after noticed hearing upon a supplemental petition.' The supplemental petition procedure is designed for situations where it is necessary to substitute a more restrictive placement because the original disposition by the juvenile court 'has not been effective in the rehabilitation or protection of the minor.' (§ 777, subd. (a).) Typically, a section 777 supplemental petition will be required to move a minor from a foster home or juvenile hall to the custody of the Youth Authority. [Citations.] Since this modification results in a greater intrusion on the minor's liberty, a section 777 petition must contain a statement of the facts which it is alleged demonstrate a need for [more restrictive] placement [citation] and can only be sustained after notice and hearing." (*Id.* at p. 326.)

 Competent evidence must be introduced at the jurisdictional hearing supporting the necessity of ordering more restrictive level of confinement. (*In re Ronnie P.*, *supra*, 10 Cal.App.4th at p. 1084.) A bifurcated hearing process is required. At the jurisdictional hearing, the court must make a finding the previous disposition " ' "as not been effective in the rehabilitation or protection of the minor." ' " (*In re Joe A.* (1986) 183 Cal.App.3d 11, 21 [227 Cal.Rptr. 831].) The " 'material fact [to this finding] is not that the minor may, on some one occasion, have deviated from the paths of rectitude,

probation, provided that in order to make the commitment, the court finds at a hearing that the minor has violated a condition of probation."

but that such deviation exemplifies such a complete failure by the parents to achieve rehabilitation as to compel the conclusion that further efforts by them will be unavailing.' " (*Ibid.*, quoting *In re Donna G.* (1970) 6 Cal.App.3d 890, 895 [86 Cal.Rptr. 421]; see also *In re Michael B.* (1980) 28 Cal.3d 548, 552-553 [169 Cal.Rptr. 723, 620 P.2d 173].) The juvenile court should place a minor in a more restrictive level of confinement only upon a "determination that the current disposition has been a complete failure in rehabilitating the minor." (*In re Joe A.*, *supra*, 183 Cal.App.3d at p. 21.)[5]

*In re Joe A.* further explained: "Rounding out these policy considerations are the additions to section 777 of subdivision (b) in 1979 and subdivision (e) in 1981. There is, of course, a broad spectrum of conduct on the part of a minor which indicates the existing disposition is not serving a rehabilitative purpose. Such conduct ranges from behavior which would be deemed criminal if committed by an adult, such as robbery or assault, to conduct which is only wrongful because the juvenile court has instructed the minor not to engage in it, usually as a condition of probation. While conduct otherwise criminal raises few problems with respect to increasing the restrictive level of confinement, lesser conduct may not convince the juvenile court that the existing disposition is such a complete failure that further efforts would be unavailing. However the juvenile court may still desire to reemphasize to the minor the seriousness of his wardship and the overriding need to comply with probation conditions.

"Thus Assembly Bill No. 1628, introduced in the 1979 Regular Session of the Legislature, proposed the addition of subdivision (b) to section 777 as a middle ground between the two extremes then available to a juvenile court confronted with a minor on a supplemental petition for a violation of a condition of probation. The enrolled report on Assembly Bill No. 1628 prepared by the Legal Affairs Department of the Governor's office states in part: 'Under § 777 a supplemental petition shall be granted when the court finds that the previous disposition has not been effective in the rehabilitation or protection of the minor. Once granted, the court can then remove the minor from his home and place him in a foster home or commit the minor to a county institution or to the Youth Authority.

---

[5]California Rules of Court, rule 1430(c)(1) sets forth the ascending order of levels of more restrictive placement:
"(A) Placement in the home of the person entitled to legal custody:
"(B) Placement in the home of a noncustodial parent;
"(C) Placement in the home of a relative or friend;
"(D) Placement in a foster home;
"(E) Commitment to a private institution;
"(F) Commitment to a county institution;
"(G) Commitment to the California Youth Authority."

" 'Oftentimes in juvenile court cases a judge is reluctant to initially impose time in a juvenile facility as a condition of probation. However, when juveniles violate a condition of probation, the judge may feel that time in custody is warranted. Establishing that the previous order of probation is ineffective as required by the *Glenn* case [*In re Glenn K.* (1977) 74 Cal.App.3d 342 (141 Cal.Rptr. 486)] and § 777, imposes an onerous and unnecessary burden upon the courts and prosecutors.

" 'AB 1628 addresses this problem by amending Section 777 to provide that a supplemental petition may be filed alleging violation of a condition of probation and commitment of the minor to a juvenile institution for a period of 15 days or less. In order to make such a commitment the court must find that such commitment is in the best interest of the minor. The court need not find that the previous disposition has not been effective.' The problem or deficiency under existing law which Assembly Bill No. 1628 proposed to remedy was defined by the Senate Committee on Judiciary as follows: 'Presently, if a minor who is a ward of the court fails on probation, there is no middle course to correct the minor's conduct—either nothing is done or it must be shown that probation has *completely* failed, at which time the minor may be sent to CYA or other long term placement. This measure allows the court to hold for up to 15 days if there is a violation of a *condition* of probation—a middle course between the two present alternatives.'

"While exercise of the middle option available under section 777, subdivision (b) still necessitates the filing of a petition, subdivision (e), added by Statutes 1981, chapter 1142, section 9, dispenses with the need for a supplemental petition when the original disposition imposed a specified time in custody but stayed enforcement subject to satisfactory probation. Under subdivision (e), once the court finds that a minor has violated a condition of probation, the court may commit the minor to a county institution for up to 30 days if such time was originally imposed but stayed at the initial disposition. (*In re Ricardo M.* (1975) 52 Cal.App.3d 744 [125 Cal.Rptr. 291].)" (*In re Joe A., supra*, 183 Cal.App.3d at pp. 22-23, italics in original.)

The dispositional hearing is the second phase of the supplemental petition proceedings. Therein, the juvenile court must consider evidence as to the appropriate disposition for the minor. After hearing evidence, the court must reassess the disposition in light of the then prevailing circumstances. (*In re Chad S.* (1994) 30 Cal.App.4th 607, 612 [35 Cal.Rptr.2d 795].) At disposition, if the juvenile court removes custody from the parent, it must make the findings required by section 726 and California Rules of Court, rule 1493(c): The court must expressly find, inter alia, "the child has been on probation in the custody of the parent or guardian and during that time has failed to

reform" or "the welfare of the child requires that physical custody be removed from the parent or guardian." (§ 726, subd. (b); *In re J.L.P.* (1972) 25 Cal.App.3d 86, 88-90 [100 Cal.Rptr. 601].) If a minor is to be committed to the California Youth Authority, there must be evidence the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by commitment and the juvenile court must make that additional finding. (§ 734; *In re Chad S., supra,* 30 Cal.App.4th 607, 614.)

The appellate courts have not previously approved any effort by a juvenile court to circumvent the requirements of section 777. In *In re Ronnie P., supra,* 10 Cal.App.4th 1079, a leading case on the issue, the appellate court reversed the juvenile court's order automatically lifting a "suspension" of a California Youth Authority (CYA) commitment. The appellate court found there was insufficient evidence to support a section 777 finding on evidence appellant fled from a custodial officer, an act which in itself was not a criminal offense or a violation of the terms and conditions of the minor's probation. The minor had just been placed and the placement was of the opinion it could work with the minor. The appellate court said, if the juvenile court had properly considered the minor's entire circumstances, the court would not have concluded the prior commitment was ineffective. Furthermore the appellate court found no authorization in section 777 for imposing a commitment and staying or suspending it conditioned upon a minor's good behavior.

The *Ronnie P.* court said: "First we note the complete absence of authority for an order imposing a 'suspended' or 'stayed' Youth Authority commitment. Courts have permitted the imposition of a brief juvenile hall detention stayed on condition that other dispositional orders be performed. (E.g., *In re Mark M.* (1980) 109 Cal.App.3d 873 [167 Cal.Rptr. 461]; see *In re Ricardo M.* (1975) 52 Cal.App.3d 744 [125 Cal.Rptr. 291].) This practice has been codified at section 777, subdivision (e), which permits the court to enforce, upon a violation of 'a condition or conditions of probation,' a 'stayed' order for confinement in a county institution for up to 30 days. The expression of this narrow authorization implies the exclusion of any broader authority for 'stayed' dispositions, under the doctrine of '*expressio unius est exclusio alterius.*' (See *In re Michael G.* (1988) 44 Cal.3d 283, 291 [243 Cal.Rptr. 224, 747 P.2d 1152].)

"Nor do we find anything suggesting that the court may forego a thorough review of dispositional considerations in favor of a previously 'stayed' Youth Authority commitment. Such a notion runs contrary to the basic purposes, principles, and procedures of juvenile law. The stated central

objective of the law with respect to delinquent children is to provide the 'care, treatment and guidance which is consistent with their best interest, which holds them accountable for their behavior, and which is appropriate for their circumstances.' (§ 202, subd. (b).) To determine what is appropriate under a given set of circumstances, a court must review those circumstances every time the minor appears for a dispositional hearing. Thus, '[j]uvenile courts . . . shall consider the safety and protection of the public and the best interests of the minor in *all* deliberations pursuant to this chapter.' (*Id.*, subd. (d), italics added.) '*Each time* a ward comes before the court . . . , the goal of any resulting dispositional order is to rehabilitate the minor.' (*In re Scott K.* [(1984)] 156 Cal.App.3d 273, 277 [203 Cal.Rptr. 268], italics added.) A lockstep escalation of dispositions 'falls short of the particularized consideration which underlies the entire juvenile court system.' (*In re Joe A., supra*, 183 Cal.App.3d at p. 29.)

"We have found no decisions discussing a 'stayed' Youth Authority commitment, but several cases make it clear that a juvenile court errs by purporting to determine dispositional issues in advance of the dispositional hearing. In *In re J. L. P.* (1972) 25 Cal.App.3d 86 [100 Cal.Rptr. 601], the court purported to give the minor a choice whether to be tried as an adult or under the juvenile court law. The court said that if the minor chose the latter and the petition were sustained, the minor would be committed to the Youth Authority. The minor so chose and the court so ordered, refusing to receive evidence concerning the possible efficacy of less restrictive dispositions. The commitment order was reversed, principally because the procedure involved an impermissible predetermination of dispositional issues prior to any hearing. (*Id.*, at p. 90.) [¶] Two other cases recognize the impropriety of a dispositional order which purports to be 'self-executing' (*In re Jonathan M.* (1981) 117 Cal.App.3d 530, 538 [172 Cal.Rptr. 833]), or to impose an 'automatic' penalty for misconduct. (*In re Gerald B.* (1980) 105 Cal.App.3d 119, 126-127 [164 Cal.Rptr. 193].)" (*In re Ronnie P., supra*, 10 Cal.App.4th at pp. 1087-1088.)

The court in *Ronnie P.* also rejected any analogy to adult criminal sentencing: "[A] dispositional hearing on supplemental juvenile court petition 'is only superficially analogous to an adult probation revocation hearing because neither the purposes nor the consequences of these proceedings are the same . . . . [J]uvenile probation is not, as with an adult, an act of leniency in lieu of statutory punishment; it is an ingredient of a final order for the minor reformation and rehabilitation. A grant of juvenile probation is not revoked upon sustaining a supplemental petition; rather, the entire underlying order is subject to modification "as the judge deems meet and proper." ' (*In re Antonio A.* (1990) 225 Cal.App.3d 700, 706 [275 Cal. Rptr.

482], quoting § 775; see *In re Bernardino S.* (1992) 4 Cal.App.4th 613, 622, fn. 5 [5 Cal.Rptr.2d 746], quoting 1 Cal. Juvenile Court Practice (Cont.Ed.Bar 1981) § 9.52, p. 256 ['juvenile probation is not an act of leniency or an alternative to a more rigorous prescribed penalty, but "a final order made in the minor's best interest" ']; *In re Arthur N., supra,* 16 Cal.3d 226, 236.)" (*In re Ronnie P., supra,* 10 Cal.App.4th at p. 1089.)

Later, the court in *In re Babak S.* (1993) 18 Cal.App.4th 1077, 1090-1091 [22 Cal.Rptr.2d 893], agreed with the decision in *Ronnie P.* and found the juvenile court erred by relying on a previous dispositional order purporting to impose a "suspended" CYA commitment. The *Babak S.* court returned the cause to the juvenile court to independently review the dispositional issues, including the efficacy of a less restrictive dispositions, the safety and protection of the public and the best interests of the minor.

Several other appellate decisions repudiated *Ronnie P.* in part. These decisions approved stayed commitment orders based upon the decision in *In re Lance W.* (1985) 37 Cal.3d 873, 899 [210 Cal.Rptr. 631, 694 P.2d 744]. But, notwithstanding a "stayed" or "suspended" commitment order, the decisions required the juvenile court to follow section 777 procedures by: (1) hearing evidence as to the efficacy of the prior disposition, (2) considering independently on the whole record whether the prior dispositional order had entirely failed, and (3) determining if a more restrictive level of confinement was necessary to the minor's rehabilitation. (*In re Chad S., supra,* 30 Cal.App.4th at pp. 610-615; *In re Domanic B.* (1994) 23 Cal.App.4th 366, 370-375 [28 Cal.Rptr.2d 439]; *In re Kazuo G.* (1994) 22 Cal.App.4th 1, 9-11 [27 Cal.Rptr.2d 155]; cf. *In re Benny S.* (1991) 230 Cal.App.3d 102, 110-111 [281 Cal.Rptr. 1]; see *In re Ricardo A.* (1995) 32 Cal.App.4th 1190, 1197-1198 [38 Cal.Rptr.2d 586].)

Notably, in *In re Kazuo G., supra,* 22 Cal.App.4th 1, the appellate court said: "A juvenile commitment may be imposed and stayed when probation is granted—to serve as a warning to the minor where his continued delinquency will lead. [¶] Moreover . . . subdivision (e) of section 777 contemplates just such a procedure. It provides: 'The filing of a supplemental petition and the hearing thereon shall not be required for the commitment of a minor to a county institution for a period of 30 days or less pursuant to an original or a previous order imposing a specified time in custody and staying the enforcement of the order subject to subsequent violation of a condition or conditions of probation, provided that in order to make the commitment, the court finds at a hearing that the minor has violated a condition of probation.' [¶] As we read the statute, it merely creates an exception to the requirement of a supplemental petition if the commitment is for 30 days or less. . . .

[S]ubdivision (e) does not limit the juvenile court's authority to impose and stay a longer commitment. For commitments longer than 30 days the exception created by subdivision (e) will not apply and the general procedural requirements of section 777 (a supplemental petition and noticed hearing) must be followed before the stay is lifted." (*Kazuo G.*, *supra*, 22 Cal.App.4th at pp. 9-10, fn. omitted.) "And the court may not impose the commitment automatically; it must reassess the dispositional issues in light of the then-prevailing circumstances." (*Kazuo G.*, at p. 11.)

Other decisions predating *Ronnie P.* also rejected the use of contempt proceedings or other devices which evade the requirements of section 777. (*In re Geronimo M.*, *supra*, 166 Cal.App.3d 573, 587-588 [continuing the dispositional hearing]; *In re Ruben A.* (1981) 121 Cal.App.3d 671, 674-675 [175 Cal.Rptr. 649] ["progress review" procedure sidesteps requirements of section 777]; *In re Phillip A.* (1980) 109 Cal.App.3d 1004, 1009 [169 Cal.Rptr. 88] [summary detention in juvenile hall following automatically after school absence]; *In re Willie T.* (1977) 71 Cal.App.3d 345, 353-354 [139 Cal.Rptr. 439] [continuing the dispositional hearing].)

C. *To find waiver in this instance would improperly evade the provisions of Welfare and Institutions Code section 777.*

 Applying section 777 and these prior decisions to appellant's circumstances, appellant prospectively has not, and cannot, waive his statutory and due process rights attendant to section 777 proceedings. There was no express waiver of all the constitutional rights attendant to section 777 proceedings and the juvenile court did not advise fully appellant of the consequences of his waiver. (*In re Ronald E.*, *supra*, 19 Cal.3d at pp. 320-322 & fns. 3, 4 & 7; see *People* v. *Howard* (1992) 1 Cal.4th 1132, 1178, 1180 [5 Cal.Rptr.2d 268, 824 P.2d 1315].) Furthermore, the waiver entirely circumvented the supplementary petition proceedings contemplated by section 777, which is contrary to the legislative intent underlying this provision of the juvenile court law.

A juvenile court may "stay" or "suspend" a more onerous confinement choice for the purpose of impressing a minor with the path on which he will find himself if he continues his delinquency. But attendant to that order, the juvenile court cannot obtain a valid waiver of a minor's rights to supplemental proceedings in the event the juvenile court later chooses to confine the minor in a more restrictive placement. Under the existing juvenile court law, the juvenile court must make the dispositional order appropriate to appellant's circumstances at the time of disposition. After attempting that level of disposition, if it appears the present level of restriction is not effective, the

juvenile court must initiate the proceedings contemplated by section 777. Section 777 proceedings, by the explicit terms of the statute, can be avoided only where the length of the confinement contemplated by the juvenile court is 30 days or less. Otherwise, a section 777 petition must be filed and the juvenile court must have evidence before it to support a finding the previous disposition has not been effective in the rehabilitation or protection of the minor. It is also impermissible for the juvenile court to predetermine dispositional issues prior to a hearing. "[T]he court is required to examine the entire dispostional picture whenever the minor comes before the court for disposition. It cannot treat an earlier order as 'self-executing' or 'automatic.'" (*In re Ronnie P.*, *supra*, 10 Cal.App.4th at p. 1088; accord, *In re Chad S.*, *supra*, 30 Cal.App.4th at p. 613; *In re Kazuo G.*, *supra*, 22 Cal.App.4th at pp. 10-11.)[6]

II. *The Matter Must Be Remanded for the Finding on the "Wobbler" as Required by Section 702.*

■ The contention a remand is required for the juvenile court to declare the grand theft offense a felony or misdemeanor is well taken.

The grand theft offense is a "wobbler." The juvenile court never made the express oral on-the-record finding the grand theft was a felony or misdemeanor, as is required by section 702 (*In re Kenneth H.* (1983) 33 Cal.3d 616, 620 [189 Cal.Rptr. 867, 659 P.2d 1156]; *In re Ricky H.* (1981) 30 Cal.3d 176, 191 [178 Cal.Rptr. 324, 636 P.2d 13]).

*In re Manzy W.* (1997) 14 Cal.4th 1199 [60 Cal.Rptr.2d 889, 930 P.2d 1255], settled any further controversy about whether an express finding is necessary to determine if a "wobber" is a felony or misdemeanor. *Manzy W.* held the juvenile court must exercise its discretion to determine whether a minor is to be treated as a misdemeanant where it has been found true he has committed a "wobbler" offense. The record must demonstrate the exercise of discretion.

There is nothing in this record to indicate the juvenile court was aware it had such discretion or to indicate the juvenile court had exercised its discretion. A remand is ordered for the juvenile court to make the determination required by section 702. Upon remand, if the juvenile declares the grand theft offense to be a misdemeanor, the juvenile court shall recalculate the maximum theoretical period of confinement.

[6]Section 777 does not prevent a minor from admitting the allegations of the section 777 petition once the petition is filed.

DISPOSITION

That portion of the juvenile court's order finding appellant waived his statutory and constitutional rights to supplemental petition proceedings as provided in Welfare and Institutions Code section 777 is vacated. The cause is remanded for the juvenile court to exercise its discretion to expressly declare whether the grand theft is a felony or misdemeanor. If the grand theft offense is declared a misdemeanor, the juvenile court shall recalculate the maximum theoretical period of confinement. In all other respects, the order under review is affirmed.

Lillie, P. J., and Woods, J., concurred.

A petition for a rehearing was denied May 7, 1997, and respondent's petition for review by the Supreme Court was denied July 23, 1997.