Filed 5/27/16  In re L.M. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>L.M.,<br><br>    Defendant and Appellant. | F070991<br><br>(Tulare Super. Ct. No. JJD065084)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Arthur Lee Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, William K. Kim and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Gomes, Acting P.J., Kane, J. and Poochigian, J.

Appellant L.M., a minor, appeals from the juvenile court's dispositional order committing her to the California Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ) for a violation of her probation under Welfare and Institutions Code sections 602, subdivision (a), and 777, subdivision (a).[1]  Specifically, appellant contends there was insufficient evidence presented to conclude appellant would benefit from the placement and that less restrictive alternatives would be ineffective.  For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### Appellant's Current Petition, Subsequent Probation Violation Notices, and Dispositions

Appellant is a child with a long history before the juvenile court in Tulare County. Appellant's current commitment to the DJJ follows multiple notices of probation violations tied to a sustained petition previously filed on November 5, 2013.

On October 25, 2013, while committed to the Tulare County Probation Department's long-term care program,[2] appellant attacked another minor.  As a result of that attack, a petition pursuant to section 602, subdivision (a), was filed, alleging appellant committed the crime of assault by means of force likely to produce great bodily injury.  Appellant admitted the charge in the petition and was recommitted to the long-term care program.

In the long-term care program appellant participated in a drug and alcohol treatment program, was provided with weekly mental health sessions, although she regularly refused to participate, and was offered family counseling, although her parents only attended one session.  Appellant was proceeding well at a status hearing on May 28,

---

[1]  All statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2]  The long-term care program is identified in court records as the "Tulare County Youth Correctional Center Unit (YCCU) Program."  The circumstances leading to this commitment are detailed below.

2.

2014, and a second hearing was set for August 20, 2014. Shortly before that hearing, however, appellant again attacked an individual.

As a result, a notice of violation of probation was filed, which appellant admitted. The probation officer's report noted that appellant had been engaged in anger management counseling, had begun taking Lexapro for her depression, and was seeing a counselor once a week. However, appellant had been regularly refusing to take her medication or participate in counseling in the recent past. Appellant did not feel she was ready to return home and was concerned she would run away if placed in a group home. The juvenile court ordered appellant moved from the long-term program to the Youth Facility program,[3] ordered her to continue attending individual and family counseling, and set a three-month review hearing for December 11, 2014.

Appellant performed well in the program prior to the December 11, 2014 hearing, having only three incidents with others detailed in her probation report. She attended her individual and family counseling sessions, and was recommended for transition to the Aftercare Program. The juvenile court recognized appellant's progress, granted release to the Aftercare Program, placed appellant on electronic monitoring, and ordered her to continue her counseling.

Two days later, appellant cut off her electronic monitor, attended a party where she consumed alcohol, marijuana, and cocaine, and associated with known gang members. Appellant was arrested on December 14, 2014. A notice of violation of probation was filed on January 7, 2015, and appellant admitted the violation on January 8, 2015. The current appeal is taken from the disposition of this violation.

---

[3] The Youth Facility program is identified in court records as the "Tulare County Youth Facility." It appears to be regularly referred to as the "Mid-Term Program."

***Appellant's Prior Petitions, Probation Violation Notices, and Dispositions***

Prior to the October 2013 incident leading to appellant's current petition, appellant had been a continuous ward of the court since 2011. Appellant came before the court at the age of 13, under a petition filed November 22, 2010. That petition alleged appellant had committed a battery on school, park, or hospital property. In the course of these proceedings, the court was made aware that appellant had recently been released from a mental health hospital and was undergoing extensive mental health counseling for issues arising from two prior sexual assaults. She was also taking medication for depression.

A first amended petition was filed on March 1, 2011, adding an additional allegation of vandalism. Appellant was arraigned and denied the charges on March 2, 2011. Recognizing appellant's major mental health needs, the juvenile court ordered a full psychological evaluation, and required appellant to see mental health professionals on a regular basis. An assessment following this order identified severe mental issues, including suicidal tendencies, but noted appellant was receiving and would continue to receive treatment through therapy and medication. At a status hearing on March 18, 2011, the juvenile court recognized that mental health care was appellant's most important issue, confirmed appellant had been seeing a counselor, and confirmed appellant had been experiencing progress due to her medication.

Appellant ultimately admitted to the charges in the first amended petition on March 22, 2011. Appellant was adjudged a ward of the court on April 7, 2011, and placed with her mother. The juvenile court specifically ordered that her individual and family therapy include treatment based on her psychological evaluation, and appellant was placed on electronic monitoring.

In early May 2011, appellant removed her electronic monitor and ran away from home twice in a two-day period. A notice of violation of probation was filed, which appellant admitted. At the notice hearing, appellant's mother noted that appellant had

ceased taking her medication and threatened suicide shortly before absconding. As a result, the juvenile court ordered another mental health review.

Around this time, appellant became pregnant. Appellant's medication was ceased, due to her pregnancy, although she continued to receive individual therapy. Although the juvenile court had concerns about home placement, on August 1, 2011, appellant was released to the care of her mother with wrap around services in place. Although she remained off her medication, appellant continued counseling and was considered to be doing well through her May 3, 2012 status hearing.

In August 2012, a second notice of violation of probation was filed, alleging that appellant left her residence on July 26, 2012, and did not return until July 28, 2012. Appellant admitted to the violation, and the probation report indicated that appellant had been drinking and engaging in inappropriate sexual conduct during the month of July 2012. Recognizing services to keep appellant placed at home had failed, the juvenile court placed appellant in foster care. Additional counseling was ordered, and it was noted that appellant had been refusing to take her prescribed medication since the birth of her child.

Appellant was ultimately placed at the Promesa Group Home, with her new daughter, on September 13, 2012. Prior to placement, appellant continued her counseling but was not given medication. After placement, appellant attended individual counseling weekly, group therapy twice a week, and was placed back on Zoloft.

On December 31, 2012, a third notice of violation of probation was filed, alleging that appellant absconded from the group home, failed to obey her caregiver, and failed to comply with group home rules. Appellant admitted the violation. As a result, appellant was removed from the group home, where reports showed she was not willing to participate in her counseling and treatment, and placed in the Tulare County Probation

Department's short-term program.[4] Family counseling was added to her probation requirements.

Appellant successfully completed the short-term program, including attending her mental health sessions despite her mother's failure to attend family counseling, and on April 10, 2013, was ordered to return to a group home placement.

That same day, appellant attacked an individual while detained in the Tulare County Juvenile Hall. A second petition under section 602, subdivision (a) was filed, under which appellant admitted to the crime of battery. In addition, appellant was provided with and admitted to a fourth notice of violation of probation for participating in gang related activity, possessing letters with gang related writing, using profanity towards staff, and creating a unit disturbance by kicking her door and being involved in a physical altercation on April 9, 2013. Appellant admitted at her hearing on these matters that she had voluntarily ceased taking her medication. On May 7, 2013, appellant was again committed to the short-term program.

While appellant was proceeding on these issues, a third petition under section 602, subdivision (a), was being prepared. This third petition was filed on May 9, 2013, and alleged appellant had committed an assault and battery on April 30, 2013, with the special allegation that it was committed for the benefit of, at the direction of, and in association with a criminal street gang. At her pretrial hearing on the third petition, appellant confirmed she had not been taking her medication and admitted the charges, including the gang enhancement, contingent upon a Deferred Entry of Judgment (DEJ).

The juvenile court, however, did not find appellant suitable for DEJ. Despite this ruling, appellant reconfirmed her prior admissions. Disposition was set for one month out, to allow appellant an opportunity to show she could follow the rules without

---

[4] The short-term program is identified in court records as the "Tulare County Youth Treatment Center Unit (YTCU) Program."

incident. Appellant could not, although she did begin taking her medication again. As a result, she was committed to the Youth Facility program.

While in the Youth Facility program, appellant received her fifth notice of violation of probation, alleging a multitude of violations, such as disrespecting staff, disruptive behavior, profanity toward staff, flooding her cell, assault on staff, intimidation of others, and refusal to participate in the program. Appellant denied the allegations, but the juvenile court found them to be true beyond a reasonable doubt after a hearing on September 19, 2013. Evidence from the hearing showed appellant was not taking her medication on a daily basis. However, because it was unclear whether it was procedures at the facility or appellant's willful choice that was causing the failure, the juvenile court ordered that medication be provided at a specified time and appellant's conduct documented to ensure it was taken. Appellant was then committed to the long-term program.[5]

### *Appellant's Commitment to the DJJ*

As explained above, appellant's next violation, resulting in her fourth petition under section 602, subdivision (a), occurred on October 25, 2013, and, along with her sixth and seventh notices of violation of probation, led to the disposition appellant now contests. In that disposition, appellant was committed to the DJJ with a maximum term of five years six months, less 949 days of credit for time served.

In pronouncing appellant's commitment to the DJJ, the juvenile court addressed appellant directly. The juvenile court explained, "with your behavior, you are not giving me a lot of choices. I have given you every chance I could to try to get you on track." Continuing this line of thought, the juvenile court later said: "We've tried to give you as

---

[5] Although the oral pronouncement placed appellant in the long-term program, the signed order placed appellant in the Youth Facility as opposed to the YCCU program. Later summaries show appellant as placed consistent with the oral pronouncement, in the YCCU program.

7.

many tools to [put yourself in the right direction], and it is just not working. It tells me you need something different and something more. That's why you are going to DJJ . . . . I'm going to use every tool I have and DJJ is the last tool I have to help you. So that's why I'm going to send you to DJJ, because it is the last chance I have."

In addition, the juvenile court discussed the DJJ commitment generally, saying: "I don't see DJJ as a situation where it is just like well, we are just going to throw you away. DJJ has a lot of really good programs, and a lot of kids exactly in the same position you are in. Kids that have not done well in local reasons [*sic*] for whatever reason. [¶] Everybody is different. They all have different reasons. But DJJ has a lot more resources and a lot more programs than I have here to help you. They have a lot more things that can get you on track. They have good job training programs. They have good programs that can help you get on a positive track."

This timely appeal followed.

## DISCUSSION

Appellant contends it was an abuse of discretion to commit her to the DJJ. Specifically, relying heavily on her mental health issues, appellant alleges there was insufficient evidence before the juvenile court to conclude that less restrictive alternatives to the DJJ would have been ineffective. Appellant also argues insufficient evidence shows any benefit to being sent to the DJJ.

### *Standard of Review and Applicable Law*

"We review a juvenile court's commitment decision for abuse of discretion, indulging all reasonable inferences to support its decision." (*In re Antoine D.* (2006) 137 Cal.App.4th 1314, 1320.)

Commitment to the DJJ will be upheld "where the evidence demonstrates a probable benefit to the minor from the commitment and less restrictive alternatives would be ineffective or inappropriate." (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1250.) " ' "In determining whether there was substantial evidence to support the commitment, we must

8.

examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law." ' " (*In re Oscar A.* (2013) 217 Cal.App.4th 750, 756.)

"One of the primary objectives of juvenile court law is rehabilitation, and the statutory scheme contemplates a progressively more restrictive and punitive series of dispositions starting with home placement under supervision, and progressing to foster home placement, placement in a local treatment facility, and finally placement at the DJJ." (*In re M.S.*, *supra*, 174 Cal.App.4th at p. 1250.) In following the statutory scheme, "the court has broad discretion to choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public." (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.)

### *The Juvenile Court Did Not Abuse its Discretion*

Our review of the record before the juvenile court shows no abuse of discretion occurred when appellant was committed to the DJJ. The juvenile court explained its belief that less restrictive alternatives would not be effective by noting appellant had been through all of the programs available at the local level, but had failed to improve in a meaningful way. Substantial evidence supports this conclusion. As the facts above show, appellant had been provided with home monitoring, foster care placement, and multiple local services, including stints in the short-, mid-, and long-term programs offered by Tulare County. While appellant had stretches where she was able to generally comply with the terms imposed on her, most notably during her pregnancy, when presented with opportunities to have her supervision lessened she engaged in increasingly violent conduct, culminating in the admitted charge of assault with force likely to cause great bodily injury and ultimately the decision to cut off her electronic monitor, rejoin her gang friends, and partake in alcohol, marijuana, and cocaine. This repeated pattern of behavior was sufficient evidence for the court to conclude that less restrictive alternatives to DJJ would be ineffective.

We are not convinced by appellant's claim that the trial court failed to properly consider appellant's mental health needs in the context of less restrictive placements. The record is replete with explicit references to appellant's mental health needs. Indeed, the juvenile court recognized early on that mental health care was appellant's top need, and even in the most recent commitments made specific orders designed to ensure appellant was taking her medication and receiving both individual and family counseling. The juvenile court's explanation for committing appellant to the DJJ includes a recognition that all of these services had failed, and that a more secure setting was needed to give them, and the other services provided, an opportunity to take. While it is true that the juvenile court did not identify and specifically reference individual mental health placements which might have been available as an alternative to the DJJ commitment, it is equally true that appellant did not identify the placements noted in this appeal to the juvenile court and, thus, cannot complain that such evidence was not explicitly considered. (*In re Joseph H.* (2015) 237 Cal.App.4th 517, 544.) Ultimately, the question is not whether particular services could be offered in a less restrictive setting—we know from appellant's extensive receipt of mental health services from Tulare County that they can—but whether a less restrictive placement would be ineffective or inappropriate. (*In re M.S.*, *supra*, 174 Cal.App.4th at p. 1250.) The juvenile court did not abuse its discretion in concluding less restrictive alternatives would be ineffective.[6]

---

**6** Appellant's reliance on *In re Jorge Q.* (1997) 54 Cal.App.4th 223, 232, for the proposition that " 'a complete failure in rehabilitating the minor' " must be shown to warrant a DJJ commitment is misplaced. *In re Jorge Q.* relies on a line of cases derived from the former version of section 777, in place before Proposition 21 passed in March 2000, which expressly required evidence " 'sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor.' " (Former Welf. & Inst. Code, § 777, subd. (a), added by Stats. 1989, ch. 1117, § 18.) Proposition 21 removed this requirement, among others. (See *In re Melvin J.* (2000) 81 Cal.App.4th 742, 756-757, disapproved on another ground in *John L. v. Superior Court* (2004) 33 Cal.4th 158, 181 fn. 7.)

Likewise, we find substantial evidence supports the juvenile court's determination that appellant would benefit from commitment to the DJJ. The juvenile court explained the benefits it saw in the DJJ commitment, noting "DJJ has a lot more resources and a lot more programs than I have here to help you. They have a lot more things that can get you on track. They have good job training programs. They have good programs that can help you get on a positive track." In light of appellant's history with the local programs, the juvenile court's recognition that the programs had not been successful, and the court's view of the quality of the DJJ programs available, we see no error in the juvenile court's analysis. As explained in *In re Jonathan T.* (2008) 166 Cal.App.4th 474, 486, "[a] juvenile court must determine if the record supports a finding that it is *probable* the minor will benefit from being committed to DJJ. [Citation.] In the instant case, we infer the juvenile court found it was probable minor would benefit from being committed to DJJ, because it anticipated minor's needs would be addressed by programs offered at DJJ. There is no requirement that the court find exactly how a minor will benefit from being committed to DJJ. The court is only required to find if it is probable a minor will benefit from being committed, and the court did so in this case."

## DISPOSITION

The judgment is affirmed.

11.