Filed 2/6/26

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.C.,<br><br>        Defendant and Appellant. | A171619<br><br>(Contra Costa County<br>Super. Ct. No. J2400133) |

J.C. was adjudged a ward of the juvenile court after pleading no contest to one felony count of attempted grand theft from the person (Pen. Code, §§ 664/487, subd. (c))[1] and one misdemeanor count of brandishing an imitation firearm in a threatening manner (§ 417.4).  He was placed on home supervision with various probation conditions, including a prohibition against owning and possessing a firearm until the age of 30.  (§ 29820, subd. (b).)

J.C. raises three claims of error on appeal.  First, he contends the juvenile court exceeded its authority in imposing the firearm ban because the offense of brandishing an imitation firearm is not among the statutorily

---

\*        Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts B and C of the Discussion.

[1]        Further unspecified statutory references are to the Penal Code.

enumerated offenses that trigger the ban. Second, he maintains a remand is necessary for the court to make a finding pursuant to *In re Manzy W.* (1997) 14 Cal.4th 1199 (*Manzy W.*) as to whether his "wobbler" offense of attempted grand theft from the person was a felony or misdemeanor. Finally, J.C. contends the punishment for one of his two offenses should have been stayed because both were based on a single act.

In the published portion of this opinion, we conclude the firearm ban must be vacated, as the plain language and the legislative history of the governing statutes do not contemplate that an offense under section 417.4 triggers the ban. (See §§ 29805, 29820.) In the unpublished portion of our opinion, we conclude a remand is necessary for the juvenile court to make a *Manzy W.* determination as to J.C.'s wobbler offense. Accordingly, we will reverse the judgment and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

All dates are from 2024 unless specified otherwise.

On the evening of March 12, Antioch police officers responded to a report of someone breaking into vehicles. While the officers were en route, the dispatcher advised them that another caller had reported the same person pulling out a firearm and asking her for money at an ATM machine. When the officers arrived at the scene, they observed J.C., who matched the description of the suspect, running through a parking lot and jumping into bushes. A "replica" firearm was found in the bushes. The victim told the officers that J.C. had approached her at the ATM machine and asked " '[H]ow much money did you pull out?' " He then displayed what appeared to be a gun, and the victim ran to her car and drove away.

On March 14, a wardship petition under Welfare and Institutions Code section 602 was filed alleging that J.C., age 16, committed second degree robbery (§ 211; count one) and used a deadly and dangerous weapon (a "Replica 1911 .45 caliber handgun") in the commission of the offense (§ 12022, subd. (b)(1)).  The petition was later amended to allege that J.C. committed attempted second degree robbery (§§ 664, 211, 212.5, subd. (a)).

At the jurisdiction hearing on April 4, the juvenile court granted the prosecutor's request to amend the petition to substitute and add counts for felony attempted grand theft from the person (§§ 664, 487, subd. (c); count two) and misdemeanor brandishing an imitation firearm (§ 417.4; count three).[2]  After the court advised J.C. of his trial rights and the maximum term of confinement, J.C. pled no contest to counts two and three.  The court sustained the charges on those counts and dismissed count one and the related enhancement.  The court then denied J.C.'s request for home supervision and ordered his detention in juvenile hall.

At the initial disposition hearing on April 18, the juvenile court declared wardship and placed J.C. on home supervision in the custody of his parent or guardian for 90 days, with various probation conditions.  Among them, condition number 31 required J.C. to submit DNA samples pursuant to section 296.1 because, as the court explained, "a felony count was sustained."

---

[2]     Section 417.4 states:  "Every person who, except in self-defense, draws or exhibits an imitation firearm . . . in a threatening manner against another in such a way as to cause a reasonable person apprehension or fear of bodily harm is guilty of a misdemeanor punishable by imprisonment in a county jail for a term of not less than 30 days."  " '[I]mitation firearm' " is defined in relevant part as "any BB device, toy gun, replica of a firearm, or other device that is so substantially similar in coloration and overall appearance to an existing firearm as to lead a reasonable person to perceive that the device is a firearm."  (§ 16700, subd. (a)(1).)

However, the court reserved ruling on condition number 30, which prohibited J.C. from owning and possessing a firearm until the age of 30. The court set a hearing on the gun ban condition for May 16.

At the continued hearing on May 16, the juvenile court maintained J.C. on home supervision and set a further hearing on "Home Supervision Review and Gun Ban" for June 11. The defense filed a brief arguing the firearm ban of section 29820, subdivision (b), did not apply to the offense of brandishing an imitation firearm under section 417.4. At the continued hearing on June 11, the juvenile court terminated home supervision but retained J.C. on electronic monitoring and set a hearing on "Gun Ban Applicability" for August 8.

On July 25, the probation department filed a notice of probation violation (Welf. & Inst. Code, § 777) alleging J.C. failed to abide by his curfew and had a positive drug test.

On August 8, the juvenile court held a combined hearing on the probation violation notice and the "outstanding" firearm ban question. After being advised that J.C. was prepared to admit the probation violation, the court advised J.C. of his rights to a probation violation hearing. The court then stated, "There is still a remaining period of time that you could be confined in a locked facility, [J.C.], and I believe that the maximum period of time has been one year, 60 days." The court noted that J.C. had spent "a little bit" of time in juvenile hall and believed "there was one year and 23 days remaining, and I don't think you spent any more time in Juvenile Hall since then. So that's what I believe is the maximum period. [¶] I do understand that there's a period of time that still exists and remains where you could be confined in a locked facility, and that would be for one year and 23 days. [¶] I need you to answer out loud." J.C. responded, "Yes, ma'am."

4

The juvenile court found that the allegation of J.C.'s probation violation was true and that he had made a knowing and intelligent waiver of his right to a contested probation violation hearing. The court placed J.C. on home supervision for 45 days.

The juvenile court then found the firearm ban applied notwithstanding the absence of section 417.4 from the list of enumerated offenses in section 29805, subdivision (a)(1). In the court's view, imposing the firearm ban for a section 417.4 offense was consistent with the Legislature's concerns that an imitation firearm still poses a threat of harm to the wielder and others due to how it could be perceived by law enforcement. In the court's words, the legislative intent "has [not] changed any—even with the change from 417.2 and the new 417.4. So I do believe the gun ban is applicable, that it is consistent with the legislative intent, and I'm imposing the gun ban, which I believe was initially in the probation terms. I'm just going to find it, and I reserved it." Near the end of the hearing, the juvenile court clarified that the "remaining custody time" that J.C. could be "confined in a facility such as Juvenile Hall would be 293 days, not one year and 23."

On October 7, J.C. filed a Judicial Council form JV-800 "Notice of Appeal—Juvenile." In the form, J.C. specified his appeal pertained to "August 8, 2024 — Imposition of Gun Ban."

## DISCUSSION

### A. Firearm Prohibition

J.C. contends the juvenile court erred in imposing the firearm prohibition of section 29820, subdivision (b), as a condition of probation because brandishing an imitation firearm in violation of section 417.4 is not an enumerated offense that triggers the ban. This raises an issue of

5

statutory interpretation, which is subject to our independent review. (*People v. Tran* (2015) 61 Cal.4th 1160, 1166.)

In construing a statute, our role is to " 'divine and give effect to the Legislature's intent.' " (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 507–508.) " ' "If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls." ' " (*In re W.B.* (2012) 55 Cal.4th 30, 52.) We may not add to or alter the words of the statute "to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.)

Of course, the plain meaning rule "does not prohibit courts from determining whether the literal meaning of a statute comports with the statute's purpose as reflected by its express language. [Citation.] Courts should not give language of a statute its literal meaning if doing so would result in absurd consequences unintended by the Legislature. [Citation.] In that case, the intent of the law prevails over the letter, and the letter, if possible, will be read so as to conform to the spirit of the act." (*In re David S.* (2005) 133 Cal.App.4th 1160, 1164 (*David S.*).)

If the statutory language "supports more than one reasonable interpretation, we look to a variety of extrinsic aids, including the objects to be achieved, the evils to be remedied, the legislative history, the statutory scheme of which the statute is a part, and contemporaneous administrative construction, as well as questions of public policy." (*In re Derrick B.* (2006) 39 Cal.4th 535, 539.) And under the rule of lenity, when two reasonable interpretations of a criminal statute stand in relative equipoise, the ambiguity " 'should be resolved in favor of lenity, giving the defendant the

benefit of every reasonable doubt on questions of interpretation.' " (*People v. Reynoza* (2024) 15 Cal.5th 982, 1012 (*Reynoza*).)

As in all cases involving statutory interpretation, we begin with the language of the governing statutes.

Section 29820 prohibits the ownership, possession, custody, and control of a firearm by persons who have been adjudged juvenile court wards for having committed specified offenses until they reach the age of 30. (§ 29820, subd. (b).) Subdivision (a)(1) sets forth several categories of qualifying offenses, including the offenses listed in Welfare and Institutions Code section 707, subdivision (b) (§ 29820, subd. (a)(1)(A)), and various drug-related offenses in violation of the Health and Safety Code (§ 29820, subd. (a)(1)(B)–(F).) As relevant here, under section 29820, subdivision (a)(1)(G) and (a)(2), the firearm ban applies to a person who "was alleged to have committed an offense enumerated in Section 29805" and "is subsequently adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because" of the person's commission of that offense.

In turn, section 29805 currently enumerates more than 40 misdemeanor offenses that would trigger the firearm ban via section 29820, subdivision (a)(1)(G). (§ 29805, subd. (a)(1).) As relevant here, the list includes section 417, which criminalizes the brandishing of a "firearm, whether loaded or unloaded" or a "deadly weapon . . . other than a firearm" in a rude, angry, or threatening manner, and not in self-defense. (§ 417, subd. (a)(1), (2).) Section 417 is immediately followed by section 417.6, which sets forth the punishment for those who intentionally inflict serious bodily injury while violating sections 417 or 417.8. Section 417.4 is not on section 29805's list.

Application of the plain meaning rule, as well as the maxim of statutory construction that "the expression of certain items in a statute necessarily involves exclusion of other things not expressed" (*People v. Conley* (2004) 116 Cal.App.4th 566, 574), leads to the conclusion that the absence of section 417.4 from the list of qualifying offenses renders the firearm ban inapplicable to that crime.

In resisting this conclusion, the People contend that section 417's presence on the list of qualifying offenses in section 29805 calls for a different result. Relying on *David S.*, *supra*, 133 Cal.App.4th 1160, the People argue the firearm ban is applicable because section 417.4 is part of a "417.x" series that shares the same legislative purpose of deterring potentially volatile confrontations caused by the public exhibition of firearms or analogous weapons. As we shall explain, the People's reliance on *David S.* is misplaced.

In *David S.*, the Court of Appeal addressed the applicability of the firearm ban in the context of battery-related offenses under former section 12021 (the precursor to sections 29805 and 29820). There, the court concluded the firearm ban was properly imposed on a juvenile court ward who admitted to misdemeanor battery on a school employee in violation of section 243.6, notwithstanding that statute's absence from the list of qualifying offenses in former section 12021, subdivision (c)(1). (*David S.*, *supra*, 133 Cal.App.4th at pp. 1164–1165.)

Two factors were essential in the *David S.* court's decision. First, former section 12021, subdivision (c)(1), specified that "generic battery" under section 242 was one of the offenses that would trigger the firearm prohibition. Thus, the court concluded, the plain language of the statute "unambiguously manifests a legislative intent to forbid people convicted of misdemeanor battery from owning or possessing firearms." (*David S.*, at p. 1164.)

8

Second, the *David S.* court highlighted that section 243.6 was "one of 10 misdemeanor battery offenses that appear in what may be called the section '243.x' series: species of misdemeanor batteries for which the punishment is potentially greater than the punishment for generic misdemeanor battery because the battery was committed on a particularly denominated category of victim or in a particular denominated locale." (*David S.*, *supra*, 133 Cal.App.4th at p. 1165.) Though none of the misdemeanor batteries contained in the section 243.x series (other than section 243) was among the offenses enumerated in section 12021, subdivision (c)(1), *David S.* reasoned that "the fact these batteries were committed on a particular victim or in a particular site does not make them any less a battery. Conviction of any of the section '243.x' series necessarily requires proof of section 242: 'willful and unlawful use of force or violence upon the person of another.' " (*David S.*, at p. 1165.) Hence, the court explained, barring the imposition of the firearm ban to persons who violated section 243.6 simply because that statute was not enumerated in former section 12021, subdivision (c)(1), would "thwart the clear legislative intent that anyone convicted of misdemeanor battery shall be banned from owning or possessing a firearm for a designated period of time." (*Ibid.*) In refusing to apply the maxim that the " 'expression of certain items in a statute necessarily involves exclusion of other things not expressed,' " the *David S.* court observed the maxim's application is "subordinate to the primary rule that the intent of a statute prevails over its letter." (*Id.* at p. 1166.)

As J.C. points out, section 29805, subdivision (a)(1), was amended after *David S.* to include another statute in the 243.x series (§ 243.4), an act that would presumably be unnecessary if the enumeration of section 243 were sufficient to apply the firearm ban to all the offenses in the 243.x series.

9

But J.C. does not contend the amendment reflects a legislative intent to overrule *David S.*, and in any event, we need not resolve that question in order to decide this case. As we shall explain, *David S.*'s rationale is simply inapplicable to the statutory series before us.

We start by observing that section 417—the initial statute in the so-called "417.x" series—is an enumerated offense that explicitly triggers the firearm ban. (See §§ 29805, subd. (a)(1), 29820, subd. (a)(1)(G).) But importantly, and unlike the battery-related offenses at issue in *David S.*, section 417.4 is not merely a "species" of section 417 that "necessarily requires proof of" a violation of section 417. (*David S.*, *supra*, 133 Cal.App.4th at p. 1165.) One may violate section 417.4 by using an imitation firearm (§ 16700), such as a toy, prop, or replica, that is neither an actual firearm (§ 16520) nor a deadly weapon (§§ 16430, 16590). Indeed, nothing in the record suggests J.C.'s use of a "replica" gun in violation of section 417.4 also constituted a violation of section 417.

Nor is the statutory structure of the 417.x series sufficiently analogous to the 243.x series such that we may reasonably draw the same conclusions as the *David S.* court. When *David S.* was decided, the 243.x series was preceded by the statute defining generic battery (§ 242) and then arranged as follows: the initial statute (§ 243) set forth the punishment for battery generally and was followed by various statutes providing more severe punishments for nine "species" of generic battery committed on certain victims or at certain locations. (See *David S.*, *supra*, 133 Cal.App.4th at p. 1165 & fn. 3.) The same cannot be said of the 417.x series, which does not follow a similar, consistent pattern of setting forth different punishments for a predicate section 417 offense committed on certain victims or at certain

10

locations.[3]  Although the 417.x statutes share a common theme involving the misuse of objects (e.g., firearms, deadly weapons, imitation firearms, laser pointers) to disturb the public peace, they are not all variations of the same generic offense in the same manner as the 243.x series at the time of *David S.*  True, some of the offenses in the 417.x series could be said to necessarily require proof of a predicate section 417 violation, but others including section 417.4 do not so reasonably fit that bill.  (See fn. 3, *ante.*)

The People nonetheless posit that a violation of section 417.4 "may prove a violation of section 417" where, for instance, a person threateningly

---

[3]  Section 417 itself sets forth increased punishment for other species of the same offense under certain circumstances—e.g., the act occurs in a public place with a concealable firearm (§ 417, subd. (a)(2)(A)); a loaded firearm is threateningly exhibited or used during a fight or quarrel on the grounds of a day care center (*id.* subd. (b)); and a firearm is threateningly exhibited in the immediate presence of a peace officer (*id.* subd. (c)).  So do certain of the other statutes in the 417.x series.  (E.g., §§ 417.3 [setting forth the punishment for threateningly drawing or exhibiting a firearm in the presence of an occupant of a motor vehicle on a public street or highway], 417.6 [setting forth the punishment for violations of sections 417 or 417.8 where serious bodily injury is intentionally inflicted by the person drawing the firearm or deadly weapon].)

But other statutes in the 417.x series do not involve use of a firearm or deadly weapon at all and instead pertain to various illegal uses of laser scopes or pointers, including aiming a laser scope in a threatening manner with the intent to cause fear of bodily harm (§§ 417.25, subd. (a), 417.26, subd. (a) [at peace officer]), and directing a laser pointer beam into the eyes of another, into a moving vehicle, or into the eyes of a guide, service, or police dog (§ 417.27, subds. (c), (d)).  And as discussed, section 417.4 makes it a misdemeanor to threateningly brandish an imitation firearm.

That said, our ruling today pertains solely to the inapplicability of the firearm ban to an offense under section 417.4.  We express no opinion on whether the firearm ban of section 29820, subdivision (a)(1)(G), applies to other offenses in the 417.x series that are not enumerated in section 29805, subdivision (a)(1).

exhibits a pellet gun that constitutes both an " 'imitation firearm' " under section 16700 and a "deadly weapon" as interpreted in other contexts. (See, e.g., *People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 540–541 [compressed air gun that fired projectiles at average of 350 feet per second, which could significantly penetrate skin, muscle tissue, and eyeball, was deadly weapon for purposes of section 245].)  Again, however, there is no evidence in the record that the replica firearm used by J.C. was anything more than a type of nonfiring reproduction of a handgun.  In any event, what matters for purposes of the rationale in *David S.* is that the unenumerated statute "necessarily requires proof" of the enumerated offense.  (*David S.*, *supra*, 133 Cal.App.4th at p. 1165.)  That a section 417.4 offense may, under certain circumstances, also constitute a violation of section 417 does not meet this standard.

Moreover, the list of offenses in section 29805, subdivision (a)(1), includes section 417.6, which further dispels the inference that the inclusion of section 417 was intended to encompass the entire 417.x series.  To conclude otherwise would render the inclusion of section 417.6 surplusage, a construction we must avoid.  (*People v. Valencia* (2017) 3 Cal.5th 347, 357.)

For these reasons, we conclude the statutory language does not signal such a "clear legislative intent" to apply the section 29820 firearm ban to a section 417.4 offense that we must overlook the plain language of the statutes in order to avoid an absurd result.  (*David S.*, *supra*, 133 Cal.App.4th at p. 1165.)  Brandishing an imitation firearm in violation of section 417.4 is not a section 417 offense committed on certain victims or at certain locations. Rather, the two offenses are fundamentally different due to the objects in question.  As such, there is nothing absurd about giving literal effect to the

12

absence of section 417.4 from the list of qualifying offenses that trigger the firearm ban of section 29820, subdivision (b).

Although we may end our analysis there, we find further support for our conclusion in the legislative history of sections 417.4, 29820, and 29805. The crime of threateningly brandishing a "replica of a firearm" was originally codified in 1987 as former section 417.2. (Stats. 1987, ch. 597, § 1, p. 1921; see *In re Michael D.* (2002) 100 Cal.App.4th 115, 121.) When former section 12021, subdivision (c)(1)—the precursor to section 29805—was enacted in 1990, it included both section 417 and former section 417.2 in its list of enumerated misdemeanor offenses that would trigger a 10-year firearm ban. (Stats. 1990, ch. 9, § 2, p. 52; see *People v. Mesce* (1997) 52 Cal.App.4th 618, 638, fn. 5, dis. opn. of Hodge, J. (*Mesce*).) Notably, however, the ban on possessing firearms until age 30 for persons adjudged wards of the juvenile court was governed by a different subdivision (former section 12021, subdivision (e), the precursor to section 29820) and was triggered only by offenses under Welfare and Institutions Code section 707, subdivision (b). (Stats. 1990, ch. 9, § 2, p. 51; see *In re M.A.* (2022) 83 Cal.App.5th 143, 151.) In other words, the ban under former section 12021, subdivision (e), was not originally linked to the section 417 and former section 417.2 offenses enumerated in former section 12021, subdivision (c)(1). A few years later, the Legislature "amended the prohibition for juveniles to include minors adjudicated as juvenile wards for offenses 'enumerated' in former section 12021, subdivision (c)." (*M.A.*, at p. 151, citing Stats. 1993–1994, 1st Ex. Sess., ch. 33, § 3, p. 8669.)

Around that same time, former section 417.2 was amended in various particulars. The Legislature reworded the offense to involve "imitation firearms instead of a replica of a firearm"; provided a definition for "imitation

firearm"; changed section 417.2 to pertain to the distribution of imitation firearms; and moved the offense of brandishing an imitation firearm to its current section number, 417.4. (Stats. 1993, ch. 598, §§ 2–3.)

In 1997, the list of qualifying offenses in section 12021, subdivision (c)(1), was amended to include two additional statutes in the 417.x series: former section 417.1 (brandishing firearm in presence of reserve peace officer) and section 417.6 (intentional infliction of serious bodily injury in commission of violations of 417 and 417.8). (Stats. 1997, ch. 143, § 1.)

In 2010, section 16700 was added, continuing a former statute's definition of "imitation firearm" (Stats. 2010, ch. 711, § 6), and section 417.4 was amended to refer to the section 16700 definition (Stats. 2010, ch. 178, § 56). Also in 2010, former section 12021 was repealed, and some of its subdivisions were continued in sections 29805 (continuing section 12021, subdivision (c)(1)) and 29820 (continuing section 12021, subdivision (e)). (Stats. 2010, ch. 711, § 5.) In 2021, section 29820, subdivision (a)(1)(G), was amended to its current form, including its reference to "an offense enumerated in Section 29805." (Stats. 2021, ch. 537, § 5.)

Thus, there was only a brief period from around 1991 to 1993 when a conviction for brandishing a "replica" firearm under former section 417.2 would result in the 10-year firearm prohibition (former § 12021, subd. (c)(1)), but even then, during that time, the firearm ban for juvenile court wards (former § 12021, subd. (e)) applied only to offenses under Welfare and Institutions Code section 707, subdivision (b), which did not include brandishing a replica firearm. Subsequent amendments and numbering changes caused the offense of brandishing an imitation firearm to be omitted from the list of enumerated offenses that would trigger the firearm bans under former section 12021, subdivisions (c) and (e), and despite several

14

further amendments to sections 417.4, 29805, and 29820 over the years, the Legislature never restored section 417.4 to the list, even while adding another statute from the section 417.x series (i.e., § 417.6).

In sum, neither the language nor the legislative history of sections 417.4, 29805, and 29820 indicates the Legislature intended section 417.4 to trigger the firearm ban, and there appears no legal or logical basis for construing section 29805's enumeration of section 417 as sufficient to encompass the entire 417.x series for purposes of imposing the ban. (See *Mesce*, *supra*, 52 Cal.App.4th at p. 638, dis. opn. of Hodge, J. ["temporary inclusion, and eventual deletion" of offense from former section 12021, subdivision (c), reflected "legislative concern to avoid overinclusion" of offenses warranting firearm ban].) And to the extent there is any ambiguity on this score, it must be resolved in favor of J.C. under the rule of lenity. (*Reynoza*, *supra*, 15 Cal.5th at p. 1012.)

For these reasons, we conclude the juvenile court erred by imposing the section 29820 firearm ban as a probation condition for J.C.'s offense under section 417.4.[4]

### B. *Manzy W.* Error

J.C. contends the juvenile court exceeded its authority by setting felony-length maximum confinement time in the absence of an express determination that his wobbler offense of attempted grand theft from the person was being treated as a felony or misdemeanor, a determination that is required under Welfare and Institutions Code section 702 and *Manzy W.*, *supra*, 14 Cal.4th 1199. Though not disputing the court's failure to make this

---

[4]    In light of our conclusion, we need not resolve J.C.'s additional contention that the juvenile court exceeded its authority by imposing a firearm ban that would extend beyond the expiration of the court's jurisdiction.

requisite determination, the People contend J.C. failed to preserve appellate jurisdiction over this claim because the error was ripe for review at the conclusion of the April 18 disposition hearing from which J.C. never timely appealed.  The People also challenge the sufficiency of the notice of appeal to preserve the *Manzy W.* claim.  We conclude that we have appellate jurisdiction over the claim, and that a limited remand is necessary.

### 1. *Timeliness of Appeal*

" 'A timely notice of appeal, as a general matter, is "essential to appellate jurisdiction." ' [Citation.]  'An untimely notice of appeal is "wholly ineffectual:  The delay cannot be waived, it cannot be cured by nunc pro tunc order, and the appellate court has no power to give relief, but must dismiss the appeal on motion or its own motion. . . ." '  ' " '[A]n unappealed disposition or postdisposition order is final and binding and may not be attacked on appeal from a later appealable order.' " ' " (*In re G.C.* (2020) 8 Cal.5th 1119, 1127 (*G.C.*).)

As a general matter, a judgment is appealable when it is final, that is, " 'where no issue is left for future consideration except the fact of compliance or noncompliance.' " (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698.)  " '[T]he "judgment" in a juvenile court proceeding is the order made after the trial court has found facts establishing juvenile court jurisdiction and has conducted a hearing into the proper disposition to be made.' " (*In re Henry S.* (2006) 140 Cal.App.4th 248, 255 (*Henry S.*).)  In juvenile court parlance, " '[t]he jurisdictional hearing is equivalent to a "bench trial" in a criminal court.  [Citation.]  Although a juvenile court judge adjudicates alleged law violations, there are no "conviction[s]" in juvenile court.  [Citation.]  Rather, the juvenile court determines . . . whether the allegations are "true" and if the minor comes within its jurisdiction.

16

[Citation.] [¶] 'There is no "sentence," per se, in juvenile court. Rather, a judge can impose a wide variety of rehabilitation alternatives after conducting a "dispositional hearing," which is equivalent to a sentencing hearing in a criminal court.' " (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 306.) As part of the disposition, the juvenile court may " 'impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' " (*In re Edward B.* (2017) 10 Cal.App.5th 1228, 1232; see Cal. Rules of Court, rule 5.790 [at disposition, if minor is on probation, court must set reasonable terms and conditions of probation].)

Here, the People acknowledge the juvenile court "continued" the disposition hearing on the firearm ban issue, which the People describe as "pending from the April 18 dispositional hearing." Thus, the disposition did not become final and appealable until the juvenile court imposed the firearm ban at the August 8 hearing. Indeed, to hold otherwise would contravene the purposes underlying the one final judgment rule, which states that "an appeal lies only from a final judgment, not from an interlocutory order." (*In re Daniel K.* (1998) 61 Cal.App.4th 661, 671.) " ' " 'The theory behind the rule is that piecemeal disposition and multiple appeals in a single action are oppressive and costly, and review of intermediate rulings should await the final disposition of the case.' " ' " (*Henry S.*, *supra*, 140 Cal.App.4th at p. 256.) Under the People's view, J.C. would have been required to timely appeal one aspect of the disposition order following the April 18 hearing (the *Manzy W.* claim) and then timely appeal another portion of the disposition order following the August 8 hearing (the firearm ban). Such a piecemeal approach

17

to appellate procedure is precisely what the one final judgment rule was designed to prevent.  (*Ibid.*)

Contrary to the People's argument, *G.C.*, *supra*, 8 Cal.5th 1119, does not call for a different conclusion.  There, the minor failed to appeal from the disposition on her two wardship petitions and belatedly raised her *Manzy W.* claim on appeal from a later probation violation hearing.  (*G.C.*, at pp. 1122–1123.)  In urging her appeal of the *Manzy W.* error was timely, the minor argued the uncorrected error could potentially impact the maximum term of confinement in a future dependency case because the juvenile court could aggregate the periods of physical confinement for multiple felony counts or petitions, including previously sustained petitions, to arrive at the maximum term of confinement.  (*G.C.*, *supra*, 8 Cal.5th at p. 1128, citing Welf. & Inst. Code, § 726, subd. (d)(3).)  The Supreme Court was not convinced.

The *G.C.* court applied the general rule that because a disposition order is appealable, a party may not challenge such an order in an appeal of a separately appealable postdisposition order.  (*G.C.*, *supra*, 8 Cal.5th at pp. 1127–1128.)  As part of its analysis, the court observed the minor had failed to show the *Manzy W.* error had an "effect" on the subsequent probation violation disposition, such as "affect[ing] custodial time or the terms of probation ultimately imposed in the current proceeding."  (*G.C.*, at pp. 1128–1129.)  The court further remarked that the aggravating provisions of Welfare and Institutions Code section 726 were inapplicable because the minor's probation violations never led to a new criminal adjudication, and that because the minor was never removed from her mother's custody, the juvenile court "was not called upon to specify any maximum term of confinement relating to that proceeding."  (*G.C.*, at p. 1129, citation omitted.)

18

Although *G.C.* bears some resemblance to the instant case, it is distinguishable in at least two significant respects.  First, even if the juvenile court here was not *required* to specify a maximum term of confinement at the August 8 hearing because it was not removing J.C. from parental custody (*G.C.*, *supra*, 8 Cal.5th at p. 1129), there is no dispute the court *did* specify a felony-length maximum potential term prior to eliciting J.C.'s plea at that hearing.  Thus, it cannot be said that the court's *Manzy W.* error "had no effect" whatsoever on matters at the August 8 hearing.  (*G.C.*, at p. 1129, fn. 10.)

More importantly, *G.C.* involved an unappealed final disposition order, which is why the Supreme Court applied the general rule that a party may not challenge such an order through a subsequent appeal of a postdisposition order.  (*G.C.*, *supra*, 8 Cal.5th at pp. 1127–1128.)  As the *G.C.* court made clear, the minor's appeal of the *Manzy W.* claim was untimely because "[t]he disposition on petitions A and B had concluded" by the time of the probation violation hearing.  (*Id.* at pp. 1128–1129.)  Here, in contrast, the juvenile court did not render a final disposition order at the April 18 hearing because, as the People acknowledge, the court reserved ruling on one portion of the disposition—i.e., the probation condition pertaining to the firearm ban—and continued the disposition hearing on that matter for several months.  That the court addressed J.C.'s alleged probation violation in addition to the firearm ban at the August 8 hearing did not convert the court's earlier findings and rulings on April 18 into a final disposition order that triggered J.C.'s obligation to appeal.

In sum, we conclude J.C.'s notice of appeal following the August 8 hearing and order was timely.

19

## *2. Sufficiency of Notice of Appeal*

The People alternatively contend J.C.'s notice of appeal was insufficient to preserve appellate jurisdiction over the *Manzy W.* issue because the notice identified only the firearm ban and no other aspect of the proceedings. We are not persuaded.

A notice of appeal "is sufficient if it identifies the particular judgment or order being appealed." (Cal. Rules of Court, rules 8.100(a)(2), 8.405(a)(3).) The notice shall be " 'liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.' " (*In re Joshua S.* (2007) 41 Cal.4th 261, 272.) The rule of liberal construction reflects " '[t]he strong public policy in favor of hearing appeals on the merits [which] operates against depriving an aggrieved party or attorney of a right of appeal because of noncompliance with technical requirements.' " (*Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 624.) However, an exception to this rule lies where a notice of appeal is so specific it cannot be read as reaching a separate, appealable judgment or order that was not mentioned in the notice. (*Baker v. Castaldi* (2015) 235 Cal.App.4th 218, 225–226; *Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 173.)

Applying these principles, we find it appropriate to liberally construe J.C.'s notice of appeal (referencing the "August 8, 2024—Imposition of Gun Ban") as appealing from the final disposition order rendered on August 8. That the notice mentioned only the firearm ban ruling and not the *Manzy W.* claim is immaterial; both issues derive from the same final disposition order. Because J.C.'s *Manzy W.* claim does not arise from a separately appealable order or judgment, he was not required to separately identify it in his notice of appeal in order to preserve appellate jurisdiction over the disposition.

The People's case authorities are inapposite, as they involved notices of appeal that failed to identify separately appealable judgments or orders. (See *In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1138 [despite four different petitions with different case numbers and disposition dates, notice of appeal only identified one petition by case number]; *Morton v. Wagner* (2007) 156 Cal.App.4th 963, 967 [notice of appeal identifying order denying motion for reconsideration and deeming appellant vexatious litigant was insufficient to confer appellate jurisdiction over separately appealable judgment granting petition for injunction]; *Colony Hill v Ghamaty* (2006) 143 Cal.App.4th 1156, 1171 [notice of appeal from judgment insufficient to confer jurisdiction over separately appealable postjudgment attorney fee order].)  And significantly, the People do not claim to have been prejudiced in any way by J.C.'s notice of appeal.

In sum, this case appears to fall within the general rule that a notice of appeal should be liberally construed in favor of protecting the right of appeal.

### 3. *Manzy W. Error*

Welfare and Institutions Code section 702 provides that if a minor is found to have committed an offense which could be punishable alternatively as a felony or a misdemeanor, "the court shall declare the offense to be a misdemeanor or a felony."  This declaration is " 'obligatory' rather than 'merely directory' " and "must be made at or before disposition."  (*G.C.*, *supra*, 8 Cal.5th at p. 1125).)  Its purposes are to "help[] determine the length of any present or future confinement for a wobbler offense" and " 'ensur[e] that the juvenile court is aware of, and actually exercises, its discretion' " under section 702.  (*G.C.*, at p. 1125; see *Manzy W.*, *supra*, 14 Cal.4th at p. 1207.)

Here, J.C.'s offense of attempted grand theft from the person is a wobbler.  (§§ 487, subd. (c), 489, subd. (c)(1); *People v. Douglas* (2000)

21

79 Cal.App.4th 810, 813–814; *In re Jorge Q.* (1997) 54 Cal.App.4th 223, 226.) It is undisputed the juvenile court did not make an express declaration as to whether it was treating the offense as a felony or misdemeanor. That J.C. pled to a felony count and the court calculated felony-length maximum time of confinement are not determinative of statutory compliance. (*G.C.*, 8 Cal.5th at p. 1125.) "[T]he fact that a juvenile court behaves as though the offense is a felony does not show that the court made a conscious choice to treat the offense as a felony or as a misdemeanor." (*In re F.M.* (2023) 14 Cal.5th 701, 709.)

A *Manzy W.* error is not harmless unless there was some indication in the record that "the juvenile court, despite its failure to comply with the statute, was aware of, and exercised its discretion to determine the felony or misdemeanor nature of a wobbler," such that "remand would be merely redundant." (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209.) Here, we cannot say the error was harmless because, like in *Manzy W.*, "the juvenile court did not at any time refer to its discretion to declare the offense a misdemeanor" and neither the prosecution nor J.C.'s counsel "point[ed] out to the juvenile court that it had such discretion." (*Manzy W.*, at p. 1210.)

For these reasons, we will remand the matter so the juvenile court may make the required designation under Welfare and Institutions Code section 702, as well as any further orders the court deems reasonable and necessary in light of its designation.[5]

---

[5] In light of our conclusion, we need not resolve J.C.'s additional contentions, including his arguments that the *Manzy W.* claim is cognizable because ordering felony consequences without a felony finding is an unauthorized order in excess of the court's jurisdiction that can be challenged at any time; and that his counsel rendered ineffective assistance.

**C. Section 654**

J.C. argues the juvenile court committed section 654 error by failing to stay punishment for one of his two offenses because both were based on a single act of displaying an imitation firearm in the presence of a person who had withdrawn money from an ATM machine.

The People again argue that because the notice of appeal identified only the juvenile court's ruling on the firearm ban, J.C. failed to adequately preserve appellate jurisdiction over his section 654 claim. For the same reasons stated in part B.2, *ante*, we conclude we have appellate jurisdiction over this claim. Now to the merits.

Section 654, subdivision (a), provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." Where, as here, the applicable facts are undisputed, the application of section 654 raises a question of law that we review de novo. (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)

On the record before us, we see no basis to reverse on section 654 grounds. The juvenile court's recitation of a felony-length maximum term of confinement at the August 8 hearing appears to have been part of the court's advisements to J.C. prior to eliciting his plea on the probation violation allegation. The court was not required to take section 654 consequences into account in advising J.C. of the consequences of his plea. (*People v. Archer* (2014) 230 Cal.App.4th 693, 702.) J.C. does not otherwise affirmatively demonstrate from the record that the 45-day period of home supervision ordered by the court at the August 8 hearing reflected multiple punishments for a single act. (*In re J.F.* (2019) 39 Cal.App.5th 70, 79 [appellant has

23

burden of affirmatively showing error]; see also *In re A.C.* (2014) 224 Cal.App.4th 590, 591–592 [juvenile court is not required to include maximum confinement term for minor who is not removed from parental custody].)  That said, we do not foreclose further examination of the section 654 question if appropriate on remand from the *Manzy W.* claim.

**DISPOSITION**

The August 8, 2024, order of the juvenile court is reversed and remanded with directions to (1) vacate the firearm ban under section 29820, subdivision (b), and (2) make the required declaration under Welfare and Institutions Code section 702 as to whether J.C.'s offense of attempted grand theft from the person is being treated as a misdemeanor or felony, as well as any further orders the court deems reasonable and necessary in light of its designation.

_____

Fujisaki, J.

WE CONCUR:

_____

Tucher, P. J.

_____

Petrou, J.

Trial Court:      Contra Costa County Superior Court

Trial Judge:      Hon. Barbara C. Hinton

Counsel:      Law Office of Amanda K. Roze, Amanda K. Roze, under appointment by the First District Appellate Project, for Defendant and Appellant

      Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Amit Kurlekar, Deputy Attorney General, and Victoria Ratnikova, Deputy Attorney General for Plaintiff and Respondent.

*People v. J.C.* (A171619)